Answers

1. Yes, Business Finland USA Inc. (former Finpro USA Inc.) is owned by Business Finland Oy. The name was changed in the USA on June 18th, 2018. Business Finland USA Inc. (former Finpro USA Inc.) was registered as a US entity on 6/2006 in the state of Delaware to avoid problems with the IRS. Business Finland USA Inc. (former Finpro USA Inc.) was/ is operating under US legislation when registered in the State of Delaware 6/2006. When Business Finland USA Inc. (former Finpro USA Inc.) was in Stamford, CT, all the independent contractors were audited except the head of the trade center at the current time. Independent contractors were also advised not to say anything about the arrangements between them and Business Finland (former Finpro USA Inc.) Business Finland USA Inc. (former Finpro USA Inc. and former Finland Trade Center) wanted to make sure that they would not get penalized because they have not paid any employee-related state-mandated employer costs over a decade. In the worst scenario, the IRS was going to shut down their operations in the US.

2. Business Finland USA Inc. (former Finpro USA Inc.) was incorporated in the USA on 6/2006. Business Finland USA Inc. (former Finpro USA Inc.) realized that it was too risky to continue without paying the federal government mandate employee costs that employers provide workers with several legally required benefits. Unlike any voluntarily provided benefits, legally required benefits act like a safety net for employees, providing workers and their families with retirement income and medical care, mitigating economic hardship resulting from loss of work and disability, and covering liabilities resulting from workplace injuries and illnesses.

The employer cost for Employee Compensation (ECEC) focuses on the employer's portion of the cost of providing benefits, both voluntary and legally required. For legally required benefits, employers are obligated to pay their part of the cost in the form of either a payroll tax or a compulsory insurance premium. But Business Finland USA Inc. (former Finpro USA Inc.) broke all possible employer and employee laws mandated by the State of New York and the Labor Department.

Legally required employee benefits in the U.S. Federally mandated benefits. Federally mandated benefits in the U.S. include Social Security, Medicare, unemployment insurance, and workers' compensation.

Business Finland USA Inc. (former Finpro USA Inc.) treated their personnel as employees the entire time even though the personnel had independent contracts until 1/2007 when official employee contracts were signed under U.S. legislation. Business Finland USA Inc. (former Finpro USA Inc.) was registered in the state of Delaware and was and is a US company that operates under US law and regulations.

Business Finland USA Inc. (former Finpro USA Inc. and former Finland Trade Center) avoided paying all the employer-mandated costs by keeping their personnel under independent contracts until 1/2007. This was against the US labor laws. Please note, that "Employee" and "independent contractor" are different worker classifications.

The general rule is that an individual is an independent contractor if the payer has the right to control or direct only the result of the work and not what will be done and how it will be done. If you are an independent contractor, then you are self-employed. In this case, your "payer" should provide you with a 1099 yearly. Business Finland USA Inc. (former Finpro USA Inc.) did not provide such a form at any point.

3. The Washington, D.C. office is and/ or was not part of Business Finland USA Inc. (former Finpro USA Inc.). The Washington, D.C. office operates under the Ministry for Foreign Affairs. It is not part of the Business Finland USA Inc. (former Finpro USA Inc.). The Business Finland USA Inc. (former Finpro USA Inc.) is a U.S. company and operates under U.S. laws and legislation.

4. Ms. Colangelo was hired as an independent contractor in March 1997. She worked as an independent contractor until January 2007 when employee contracts were signed. Please note, that there was no U.S. company until June 2006 when Business Finland USA Inc. (former Finpro USA Inc.) was established in the state of Delaware. Please see Exhibit A, stating that Ms. Colangelo signed her employee contract in January 2007.

5. Ms. Colangelo was hired in March 1997 as an information analyst (Independent contractor) collecting information about Finnish companies. Later, she started to handle administration matters including Latin America's offices. Ms. Colangelo's responsibilities included organizing regional meetings, accommodations, venues, and flight tickets, preparing and helping with the annual budget together with the head of the Trade Center. Her responsibility was to assist Finnish companies by getting them mobile phones and finding them office space if needed. Ms. Colangelo also assisted Finnish companies and CIMO trainees in finding them living accommodations while residing in the US. Ms. Colangelo handled CIMO trainee legalities and accommodations when arriving in the US for six months or longer. Ms. Colangelo was also responsible for handling some of the trade shows for Finnish companies. Some occasions she travelled with the companies.

6. Ms. Colangelo was handling accounting for Business Finland USA Inc. (former Finpro USA Inc.). She had full and legal access to the Finpro USA Inc. bank account. She was the authorized person to make payments to employees and herself. She was an authorized account user. Ms. Colangelo was also a Business Finland USA Inc. (former Finpro USA Inc.) officer.

7. Ms. Colangelo emailed her accounting contact money request monthly (excel sheet) explaining where the money was needed. Before she received the money the head of accounting had to approve it (Ms. Helena Kuusela). Without the approval, Ms. Colangelo's accounting contact was not allowed to send the money over. This process was done since Ms. Colangelo started on 3/1997 as an independent contractor.

8. Ms. Colangelo emailed the money request monthly to the Helsinki office and the head of accounting, Ms. Helena Kuusela, had to approve it before the money was sent. This was always the case. Ms. Helena Kuusela was the person who was responsible for reviewing the request. She was fully responsible for the money transfers.

9. Business Finland USA Inc. (former Finpro USA Inc.) stated that in the spring of 2017, they started to suspect that Ms. Colangelo had misused its funding. There was not any kind of communication on this matter between Ms. Colangelo and Business Finland USA Inc. (former Finpro USA Inc.). Nothing was ever asked about the matter nor chance was given to Ms. Colangelo to explain. Ms. Helena Kuusela did not ever ask or question where the money was going. If the misuse of funds where suspected, why did Business Finland USA Inc. (former Finpro USA Inc.) wait until June 2018? It was stated that in the spring of 2017, Business Finland USA Inc. (former Finpro USA Inc.) started to suspect that Ms. Colangelo had misused its funding. Why did Business Finland USA Inc. wait for over a year to let more damage occur? What happened? To prevent more damage from occurring you should react immediately, not wait for over a year. There was no supervision in place or process of any kind. Mr. Baldauf and/or Mr. Rauste, heads of regions at the time, did not supervise even being heads of the regions and Ms. Colangelo's supervisors. They failed in their duty to supervise. If misuse of funds was suspected Business Finland USA Inc. (former Finpro USA Inc.) took over a year to react. If the company has employees and suspects misuse of funds by the employee they should react immediately, not wait for a year.

Ms. Colangelo was not ever asked about her accounting methods. She was not ever asked how she entered expenses into Navision (internal accounting system) and when not using WEBTEM (internal expense system). As she stated earlier, for all the regional meetings including travel, entertainment, hotels, flights, and client-related expenses she used an

18000 account. It was a miscellaneous account number. She entered all the large amounts under that account to be able to reimburse herself. This was well known in the USA and Helsinki offices. This method was used for years. Nothing was ever said. Ms. Colangelo's Amex card was used in the USA offices, especially in the California office. The office had Ms. Colangelo's Amex card on file. It was used when needed because the card had unlimited spending. Most of the time the California office used it without notifying Ms. Colangelo. Ms. Colangelo got emails from Amex but did not have enough time to check every transaction. It was not a good thing. Ms. Colangelo sometimes waited to input her expenses into WEBTEM and her expenses were extremely high. To be able to get paid she input the expenses under the 18000 account. She was going to transfer the expenses under the correct account but was not able to do it because of her heavy workload. Ms. Colangelo contacted on several occasions to Business Finland Oy (former Finpro Oy) in the Helsinki office begging for their help. She contacted Ms. Tiina Laino-Asikainen (former finance director) on many occasions about the expenses but the only reply Ms. Colangelo got was "WE DON'T HAVE ENOUGH MANPOWER TO HELP YOU". Ms. Tiina Laino-Asikainen failed to provide her help. There was no help or guidance from her.

10. Business Finland USA Inc. (former Finpro USA Inc.) states clearly that Ms. Colangelo faked her injury on 10/2017. Ms. Colangelo provided all the medical documents about her injury. She had 4 (four) neck surgeries, one fusion 3c/4c, and three cervical spinal cord stimulator surgeries. She had 2 (two) right-hand surgeries, and she lost her hearing 100% in her right ear using a hearing aid for the rest of her life. She is permanently disabled for the rest of her life suffering from all the other medical complications due to her injury.

Business Finland USA Inc. (former Finpro USA Inc.) Mr. Rauste harassed Ms. Colangelo when she had her accident. When Ms. Colangelo was on the operating table Mr. Rauste was calling without any sympathy. Text messages were flying while Ms. Colangelo was ready for her first neck surgery on 3/2018. Mr. Rauste was demanding company papers. Ms. Colangelo told Mr. Rauste that she did not have any company papers, but she would be able to retrieve the company papers by contacting CSC (registered agent) after her surgery. Mr. Rauste's last words were "IT IS GOING TO BE A PROBLEM". The reason for Mr. Rauste's behavior was very simple, he did not supervise Ms. Colangelo. He failed in his responsibilities miserably and he was panicking. Mr. Rauste breached his duty. Mr. Rauste harassed Ms. Colangelo while Ms. Colangelo was injured. Mr. Rauste made a clear statement that Mr. Colangelo faked her accident. Ms. Colangelo provided all the documents and notes from her doctors. Mr. Rauste knew that he was in trouble because he did not fill in his duties as the head of the region. Ms. Colangelo suffered from retaliatory harassment caused by Mr. Rauste. Mr. Rauste crossed the line by harassing Ms. Colangelo verbally and mentally while Ms. Colangelo was injured.

11. Ms. Colangelo was not ever asked or questioned if she had misused company money. The lawsuit was slammed against her in June 2018. The only occasion was when Ms. Colangelo was on the operating table waiting for her surgery to begin, Mr. Tomi Rauste was harassing her by sending her text messages and calling and asking about company papers. Mr. Tomi Rauste did not ever ask about company accounting papers, not at any point. He repeatedly asked about company papers. Ms. Colangelo told Mr. Tomi Rauste that she did not have the company papers, but she was able to retrieve the papers by contacting the CSC (Corporation Service Company).

12. Business Finland is stating that Ms. Colangelo misused company funds over the years. The attachment below does not state how Business Finland got the numbers.



| Year | Net Amount Colangelo Stole From Business Finland |
|---|---|
| 2011 | $329,523.77 |
| 2012 | $642,034.61 |
| 2013 | $648,618.64 |
| 2014 | $651,109.20 |
| 2015 | $1,086,970.46 |
| 2016 | $938,644.67 |
| 2017 | $523,880.31 |
| Total: | $4,820,781.63 |

13. If Business Finland USA Inc. (former Finpro USA Inc.) suspected Ms. Colangelo of misusing company funds why this was not discussed with Ms. Colangelo? Mr. Rauste or Mr. Baldauf did not perform their duties as head of the trade center and/or head of the regions.

They failed in their fiduciary duties. They were unfaithful servants for Business Finland USA Inc. (former Finpro USA Inc.).

Mr. Rauste and Mr. Baldauf neglected and failed to provide the level of supervision that is needed to supervise every employee in any circumstances. A supervisor, in this case, Mr. Rauste and/or Mr. Baldauf, were negligent when they had a duty to supervise. The supervisor failed to meet, or "breached", that duty.

14. Mr. Rauste and Mr. Baldauf neglected and failed to provide the level of supervision that is needed to supervise every employee in any circumstances. A supervisor, in this case, Mr. Rauste and/or Mr. Baldauf, were negligent when they had a duty to supervise. The supervisor failed to meet, or "breached", that duty.

15. No copies were ever made. Business Finland USA Inc. (former Finpro USA Inc.) did not ever show any proof Ms. Colangelo copied the logo. It was impossible. Ms. Colangelo does not have such a skill. As stated earlier a supervisor, in this case, Mr. Rauste and/or Mr. Baldauf, were negligent when they had a duty to supervise. The supervisor failed to meet, or "breached", that duty.

16. Ms. Colangelo was not ever asked about the bank statements. She was not allowed to explain. Mr. Baldauf and Mr. Rauste had full access to Business Finland USA Inc. (former Finpro USA Inc.). They were Ms. Colangelo's supervisors at the time. Mr. Rauste and/or Mr. Baldauf, were negligent when they had a duty to supervise. The supervisor failed to meet, or "breached", that duty.

17. There was no description of how Ms. Colangelo was able to reproduce the bank statements. Business Finland was not able to show how Ms. Colangelo was able to create the statements.

18. If Business Finland USA Inc. (former Finpro USA Inc.) suspected that the bank statements were fabricated. Why was this matter not communicated with Ms. Colangelo? Why did Business Finland USA Inc. (former Finpro USA Inc.) wait until June 2018? This is a good example of poor supervision. As stated earlier, a supervisor, in this case, Mr. Rauste and/or Mr. Baldauf, were negligent when they had a duty to supervise. The supervisor failed to meet, or "breached", that duty.

19. If Business Finland USA Inc. (former Finpro USA Inc.) suspected that the bank statements were fabricated why this matter was not communicated with Ms. Colangelo? Why did Business Finland USA Inc. (former Finpro USA Inc.) wait until June 2018? This is a good example of poor supervision and communication. As earlier, a supervisor, in this case, Mr. Rauste and/or Mr. Baldauf, were negligent when they had a duty to supervise. The supervisor failed to meet, or "breached", that duty. Both Mr. Rauste and Mr. Baldauf had full authorized access to Chase's bank account. They did not exercise their rights and were negligent in not doing so.

Mr. Rauste and Mr. Baldauf were misusing Business Finland USA Inc. (former Finpro USA Inc.) money because they failed to supervise. The supervisor failed to meet, or "breached", that duty.

Mr. Rauste and Mr. Baldauf were misusing Business Finland USA Inc. (former Finpro USA Inc.) funds by traveling all over the world meeting clients and keeping clients entertained. Mr. Rauste made a point to travel to Brazil for one (1) day. His flight ticket did cost thousands of dollars of Finnish taxpayers' money. Finnish taxpayers should know about this. All the media in Finland knows how Ms. Colangelo has been accused of using Business Finland USA Inc. (former Finpro USA Inc.) funds. Finnish taxpayers don't know how the funding is used here in North and Latin America. Finnish taxpayers have the right to know. How one of the new employees in the New York office was getting paid by Business Finland USA Inc. (former Finpro USA Inc.) and at the same time by Tekes. This is misusing Finnish taxpayers' money. Business Finland USA Inc. (former Finpro USA Inc.) does not share this information with Finnish taxpayers. How Mr. Rauste was hired to "manage" Region Americas even though he was not an employee of Business Finland USA Inc. (former Finpro USA Inc.). He was in Washington D.C. and worked under a diplomatic passport. Business Finland Oy spent thousands of dollars in Finnish taxpayers' money to get Mr. Rauste to the USA. Mr. Rauste misused Finnish taxpayers' money the entire time while residing in the US. He traveled most of the time and it was impossible to track him down when needed.

20. If Business Finland USA Inc. (former Finpro USA Inc.) suspected that the bank statements were fabricated why this matter was not communicated with Ms. Colangelo? Why did Business Finland USA Inc. (former Finpro USA Inc.) wait until June 2018? This is a good example of poor supervision. As stated earlier, a supervisor, in this case, Mr. Rauste and/or Mr. Baldauf, were negligent when they had a duty to supervise. The supervisor failed to meet, or "breached", that duty.

21. Ms. Colangelo did not transfer money from the Business Finland USA Inc. (former Finpro USA Inc.) bank account illegally. She only reimbursed the expenses she paid on behalf of Business Finland (former Finpro USA Inc.). Mr. Colangelo did not have access to

the Business Finland USA Inc. (former Finpro USA Inc.) bank account. Ms. Colangelo and Mr. Colangelo did not have a bank account together. Ms. Colangelo's bank account was her personal bank account. Mr. Colangelo's name was added for the reason being if something happened to Ms. Colangelo. Mr. Colangelo was not authorized to make or receive any payments from Ms. Colangelo's Chase bank account.

22. Ms. Colangelo renovated her residence using the Amex points she had been collecting over the years. She also used the money she received every year from Mr. Colangelo to cover some of the renovation costs. Ms. Colangelo had a Platinum Amex, and her card did not have a set limit. She did not have to pay the full amount monthly. For the trip to France, Ms. Colangelo used her Amex points and she also used five (5) additional credit cards to pay for her trip. Mr. Rauste was not aware of Ms. Colangelo's other credit cards. She used these credit cards to pay Business Finland USA Inc. (former Finpro USA Inc.) additional expenses when Amex was not accepted. Ms. Colangelo's children went to private school (French American School of New York). Ms. Colangelo applied for financial aid yearly. She was granted financial aid every year. Year 2023 – 2024 her payment was $30 per month. Mr. Colangelo did not want anything to do with schooling. It was entirely Ms. Colangelo's decision to put their children in private school. In the city where Ms. Colangelo resides the schools are not good. The level of education is extremely poor. Most of the residents put their children into private schools. New Rochelle School District has a major issue with gun violence. A female student got killed at New Rochelle High School a few years back. Middle school has major drug problems. Most of the schools have police present and metal detectors when entering school.

Ms. Colangelo does not have anything to do with Blacklabrador. It is Mr. Colangelo's hobby. Ms. Colangelo has not benefited from Blacklabrador at any point. Ms. Colangelo bought couple of statues from Blacklabrador to donate them to Finnish American Chamber of Commerce golf event years back. The event was in upstate New York. Ms. Colangelo does not remember the exact location.

23. The Business Finland USA Inc. (former Finpro USA Inc.) is stating that Mr. Colangelo and her children benefited from Business Finland USA Inc. (former Finpro USA Inc.) money. In this case, all the other parties benefitted from Business Finland USA Inc. (former Finpro USA Inc.) funds as well. Please see the list below from 2015 – 2017. There were meetings, entertainment, and mobile phone purchases. The list is too long to continue. Alcohol was flowing in the regional meetings. At the last regional meeting in October 2017, Mr. Rauste got worried because Ms. Colangelo had to leave early because of her injury. Mr. Rauste stated, "Who is going to pay the rest of the bill?" Ms. Colangelo replied, "They have my Amex in the file".

- Embassy of Finland in Washington employees
- Invest in Finland employees
- Visit Finland employees
- Business Finland Helsinki employees
- Business Finland USA Inc. (former Finpro USA Inc.) employees' spouses
- Finnish companies
- Ministry of Finland certain branches

Ms. Colangelo received direct orders from the head of the regions regarding what must be done without permission from the head of Business Finland OY (former Finpro OY). Ms. Colangelo followed all the orders. Including buying a new mobile phone for Mr. Rauste's wife.

24. Mr. Colangelo has not ever been a trustee for Business Finland USA Inc. (former Finpro USA Inc.). Mr. Colangelo helped Business Finland USA Inc. (former Finpro USA Inc.) to open 401k plan with John Hancock. This was agreed upon by Mr. Baldauf when the plan was opened and it was signed by Mr. Baldauf. Mr. Colangelo did not have any access to the Business Finland USA Inc. (former Finpro USA Inc.) 401k plan nor was he an authorized user. Business Finland USA Inc. (former Finpro USA Inc.) trustees were Mr. Baldauf and Ms. Colangelo.

25. Business Finland USA Inc. (former Finpro USA Inc. ) is a subsidiary of Business Finland Oy, formerly known as Finpro Oy. Business Finland USA Inc. (former Finpro USA Inc.) operates under US legislation.

26. Ms. Colangelo had her personal evaluation review once a year. She handled her work seamlessly as expected.

27. Ms. Colangelo was hired in March 1997 as an independent contractor. Even being an independent contractor, she was forced to go to the office five (5) days a week. Ms. Colangelo was an independent contractor until January 1st, 2007 when employee contracts were signed for the first time. Until then Business Finland USA Inc. (former Finpro USA Inc.) only obtained independent contractors even when they were forced to go to the office in New York City and later in Stamford, Connecticut. By this action Business Finland USA Inc. (former Finpro USA Inc.) broke all NY state labor laws.

The general rule is that an individual is an independent contractor if the payer has the right to control or direct only the result of the work and not what will be done and how it will be done. If you are an independent contractor, then you are self-employed and the company you are providing your services should give you a 1099 at the end of the year. Business Finland USA Inc. (former Finpro USA Inc.) failed to do so.

You are not an independent contractor if you perform services that can be controlled by an employer (what will be done and how it will be done). This was the case with Business Finland USA Inc. (former Finpro USA Inc.). Ms. Colangelo and other individuals were hired as independent contractors but treated as employees without any responsibilities from Business Finland USA Inc. (former Finpro USA Inc.). The Business Finland USA Inc. (former Finpro USA Inc.) was able to avoid all the employer's NY state-mandated costs over the decades costing so-called employees millions of dollars. The Business Finland USA Inc. (former Finpro USA Inc.) broke all the possible employer NY state-mandated labor laws by not paying the employer's mandated costs including but not limited to employer payroll taxes, social security, Medicare, State unemployment tax, federal unemployment tax, and workers compensation insurance. Business Finland USA Inc. (former Finpro USA Inc.) took a calculated risk by hiring independent contractors and handling them as employees without mandated benefits. The normal additional cost per employee is 15%. If payroll is $100,000.00 per month you can calculate the actual cost for Business Finland USA Inc. (former Finpro USA Inc.). From 1997 to 2006 Business Finland USA Inc. (former Finpro USA Inc.) was able to avoid $1,800,000.00 of employer's state-mandated employee costs. Business Finland USA Inc. (former Finpro USA Inc.) independent contractors were audited by the IRS around 2004 except the head of the region. All the independent contractors were advised not to release any information about Business Finland USA Inc. (former Finpro USA Inc.) practices and how independent contractors were treated. No 1099 forms were contributed at the end of the year. Independent contractors needed 1099 to complete their tax returns but they did not ever receive such forms.

28. Ms. Colangelo had an accident on October 16th, 2017, causing her head, neck, ear, and hand injury/trauma. She ended up having seven (7) surgeries and she is not able to and allowed to drive for the rest of her life. Business Finland USA Inc. (former Finpro USA Inc.) is claiming that Ms. Colangelo faked her accident. The way Mr. Rauste handled her accident was against employee laws, blaming Ms. Colangelo directly for her accident. Especially when Ms. Colangelo became disabled preventing her from doing normal daily activities.

29. Ms. Colangelo took the bank loan under her social security number. She was fully responsible for paying the loan. There was no risk for Business Finland USA Inc. (former Finpro USA Inc.). Ms. Colangelo's social security number was everywhere, including Mr. Rauste's mobile phone. Ms. Colangelo used her social security number to guarantee all the office lease agreements, clients' mobile phones, CIMO trainees' mobile phones, and

apartments. Ms. Colangelo was willing to put everything under her social security number. It is a security blanket for "creditors". If something goes wrong, it would be under Ms. Colangelo's credit report. Ms. Colangelo took a huge risk.

30. All the retirement contributions were made. There were occasions when Ms. Colangelo did not contribute money for herself because there was not enough money to make such a contribution even if it was deducted from her paycheck handled by Paychex.

31. Ms. Colangelo did not at any point misuse Business Finland USA Inc. (former Finpro USA Inc.) funds. She reimbursed expenses for herself she had paid on behalf of Business Finland USA Inc. (former Finpro USA Inc.). The times she had to arrange meetings (including regional meetings) she had to put deposits down for hotels, catering, and meeting purposes. She reimbursed herself in advance, so she was able to pay her credit card bill. There were many occasions when Business Finland USA Inc. (former Finpro USA Inc.) owed Ms. Colangelo thousands of dollars. Ms. Colangelo was asked many times about keeping such a high balance in expenses. Ms. Colangelo used WEBTEM expense system. It is/ was an internal expense system Business Finland USA Inc. (former Finpro USA Inc.) used to enter all the expenses. Ms. Marianne Hyppönen from Business Finland Oy (former Finpro Oy) advised Ms. Colangelo to invoice more often to keep her balance down.

32. Ms. Colangelo entered her expenses into WEBTEM system. There were many occasions that she did not because it was not clear what cost center the expenses belonged to. In that case, Ms. Colangelo used account 18000, a miscellaneous account. She entered paid expenses under the account 18000. The balance grew over the years because she did not have time to invoice all the clients (internal clients, external clients, Embassy of Finland, Invest in Finland, Visit Finland, Consulate of Finland, trainees).

Ms. Colangelo also did input expenses into WEBTEM system on behalf of other employees. Most of the time expenses she had paid on behalf of another employee. When WEBTEM report was generated some time 2018 - and 2019 by Business Finland USA Inc. (former Finpro USA Inc.) it was not a truthful report. Business Finland USA Inc. (former Finpro USA Inc.) denied access to the system stating that it is confidential information. The reports were run just by using Ms. Colangelo's employee number. When Ms. Colangelo processed other employees' expenses she had paid, she had to use the correct employee code. This was not the case when Business Finland USA Inc. (former Finpro USA Inc.) ran the reports.

33. Ms. Colangelo did submit monthly money requests by sending an Excel sheet to her accounting contact in the Helsinki Finland office. Before the money was sent out it had to be approved by the accounting manager, Ms. Helena Kuusela. Money wasn't sent out until Ms. Helena Kuusela approved the request. There was an itemized list of monthly expenses.

34. At any point there was no intention from Ms. Colangelo to harm Business Finland USA Inc. (former Finpro USA Inc.) She handled everything from "floor to ceiling" to make everything easy for everyone. She handled it all including situations when the head of the region was not capable of handling a situation as needed. Now after she got hurt in October 2017 and after having seven (7) surgeries Business Finland Inc. (former Finpro USA Inc.) is attacking her by slamming a vicious lawsuit against her. Business Finland found out that Ms. Colangelo filed a lawsuit against Loeb's Boathouse at Central Park. To cover the head of the trade center's failure to supervise, Mr. Rauste decided to attack and plan a major revenge against Ms. Colangelo. Mr. Rauste was in a rage when Ms. Colangelo closed his mobile line because Ms. Colangelo's expenses were not reimbursed at all. Mr. Rauste was panicking because he did not fill in his fiduciary duties by not supervising and not asking if Ms. Colangelo misused company money".

Now Business Finland USA Inc. (former Finpro USA Inc.) is blaming Ms. Colangelo for misusing company money. If this is the case, you need more than one person to dance a tango. Yes, Ms. Colangelo is guilty of not reporting of Business Finland USA Inc. (former Finpro USA Inc.) reckless way of using Finnish taxpayers' money for things and matters it was not allowed.

Ms. Colangelo is kindly asking that her Chapter 7 bankruptcy would be approved by the Court.  She is asking that all her debt would be discharged. She does not have money and she is receiving government basic benefits to make ends needs. Going back to where we started it is not going to solve anything. It will cost more Finnish taxpayers money. It has already cost close to $1,000,000.00. It is one way to misuse Finnish taxpayers money.

Jaana Colangelo

March 28th, 2024