KIRBY AISNER & CURLEY LLP
*Co-Counsel for Business Finland USA, Inc.*
700 Post Road, Suite 237
Scarsdale, New York 10583
Tel: (914) 401-9500
Julie Cvek Curley, Esq.
JCurley@kacllp.com

CERMELE & WOOD, LLP
*Co-Counsel for Business Finland USA, Inc.*
2 Westchester Park Drive, Suite 110
White Plains, New York 106040
Tel: (914) 967-2753
Michael R. Wood, Esq.
Mike@cw.legal

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

JAANA COLANGELO,

         Debtor.
-----------------------------------------------------------X
BUSINESS FINLAND USA, INC.,

       Plaintiff,

  -against-

JAANA COLANGELO,

       Defendant.
-----------------------------------------------------------X

Chapter 7
Case No. 23-22355(SHL)

Adv. Pro. No. 23-07036 (SHL)

**PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS
PURSUANT TO FED. R. BANKR. P. 7056 AND FED. R. CIV. P 56
<u>IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**

Business Finland USA, Inc., plaintiff in this adversary proceeding ("<u>Plaintiff</u>" or "<u>Business Finland</u>"), by its counsel, Kirby Aisner & Curley LLP, respectfully submits this statement,

pursuant to Local Bankruptcy Rule 7056, in connection with its motion for summary judgment against the above captioned chapter 7 debtor and defendant, Jaana Colangelo ("Debtor" or "Colangelo") seeking a determination of a of the debts owed by the Debtor to Plaintiff. Since there are no genuine issues of material fact to be tried as to the following facts, summary judgment is appropriate.

**PROCEDURAL BACKGROUND**

1. On June 20, 2018, Business Finland commenced a lawsuit against the Debtor Colangelo in the Supreme Court of the State of New York, Westchester County captioned *Business Finland USA, Inc. v. Jaana Bernadotte-Colangelo and Finpro USA Inc.*, assigned Index No. 59629/2018 (the "State Court Action"). A copy of the docket for the State Court Action (the "State Court Docket") is annexed as **Exhibit A**.

2. In its amended complaint (the "Amended Complaint") filed in the State Court Action, Business Finland asserts five (5) causes of action against the Debtor: (i) first cause of action for faithless servant, (ii) second cause of action for fraud, (iii) third cause of action for conversion, (iv) fourth cause of action for breach of fiduciary duty, and (v) fifth cause of action for imposition of constructive trust on the real property owned by the Debtor located at 66 Wilson Drive, New Rochelle, New York 10801 (the "New Rochelle Residence"). A copy of the Amended Complaint is annexed as **Exhibit B.**

3. On June 1, 2020, Business Finland a motion for partial summary judgment against the Debtor on its first cause of action for faithless servant and fifth cause of action for imposition of a constructive trust (the "State Court SJ Motion", Motion Sequence #5 on State Court Docket). Annexed hereto are copies of the following pleadings filed in support of Business Finland's State Court SJ Motion: Affidavit of Lasse Baldauf (the "Baldauf Aff."), **Exhibit C**, Affidavit of Tomi

2

Rauste, with exhibits 1 through-18 (the "Rauste Aff."), **Exhibit D**, Affirmation of Benjamin M. Rattner, with exhibits 1 through 48 (the "Rattner Aff."), **Exhibit E.**

4. On July 31, 2020, the Debtor filed her opposition to the State Court SJ Motion. *See,* State Court Docket Nos. 255 through 306. In response, Business Finland filed its memorandum of law in reply, and the Reply Affirmation of Benjamin M. Rattner, with exhibits 1 through 11 (the "Rattner Reply Aff."), a copy of which is annexed hereto as **Exhibit F.**

5. On December 21, 2020, the court in the State Court Action decided the State Court SJ Motion and issued its Decision and Order (the "Decision and Order"), a copy of which is annexed hereto as **Exhibit G**. As set forth in detail in the Decision and Order, Business Finland was granted summary judgment on its faithless servant cause of action and summary judgment as to liability on its constructive trust cause of action.

6. The State Court Action was scheduled to proceed to trial (with respect to damages on the constructive trust and the remaining claims to be tried) on May 15, 2023. *See,* Rattner letter to Court dated April 25, 2023, a copy of which is annexed hereto as **Exhibit H**.

7. On May 9, 2023, (the "Petition Date"), the Debtor filed a voluntary petition for relief with the Bankruptcy Court under chapter 7, title 11, United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in the Southern District of New York, assigned case number 23-22355 (the "Bankruptcy Case"). A copy of the docket for the Bankruptcy Case (the "Bankruptcy Docket") is annexed as **Exhibit I**.

8. On December 14, 2023, Business Finland commenced an adversary proceeding against the Debtor in the Southern District of New York, assigned adversary proceeding number 23-07036 (the "Adversary Proceeding"). A copy of the docket for the Adversary Proceeding (the "Adversary Proceeding Docket") is annexed as **Exhibit J**.

9. The complaint (the "Complaint", Adv. Pro. ECF No. 1) filed by Business Finland seeks a determination that the debt owed by the Debtor to Business Finland is nondischargeable under (i) Bankruptcy Code §523(a)(2)(A) and (c) on the basis of fraud, false pretenses, false representations (the "First Cause of Action"); (ii) Bankruptcy Code §523(a)(4) and (c) on the basis of fraud or defalcation while acting in a fiduciary capacity (the "Second Cause of Action"); and (iii) Bankruptcy Code §523(a)(6) and (c) on the basis of willful and malicious injury (the "Third Cause of Action"). A copy of the Complaint is annexed as **Exhibit K**.

10. The Debtor filed her answer to the Complaint on March 28, 2024 (the "Answer") (Adv. Pro. ECF No. 10). A copy of the Answer is annexed as **Exhibit L**.

**FACTUAL BACKGROUND**

11. As alleged in the Complaint and admitted in the Answer, Plaintiff is a Delaware corporation, formerly known as FinPro USA, Inc, and was established in 2006 by the Finnish Foreign Trade Association and is owned by a Finnish organization that was a subsidiary of the Finnish government. *See,* Complaint ¶9, 10, Answer ¶1. To promote Finnish businesses and to maintain its U.S. operations, Business Finland obtained all of its funding from its parent company in Helsinki, Finland. *See,* Complaint ¶9, 10, Answer ¶6-8.

12. As alleged in the Complaint and admitted in the Answer, Business Finland's predecessors hired the Debtor in or about March, 1997. *See,* Complaint ¶12, Answer ¶4. As alleged in the Complaint and admitted in the Answer, Business Finland and the Debtor entered into an employment agreement dated January 2, 2007 whereby the Debtor was employed by Business Finland as its "Regional Administrator" which included such responsibilities as disbursement requests for the funding of all of Business Finland's operations and the submission of information

4

used by Business Finland for cost evaluation and preparation of annual budgets. *See,* Complaint ¶12, 13, Complaint Ex. A, and Answer ¶5-8.

13. As alleged in the Complaint and admitted in the Answer, the Debtor was an authorized signatory of Plaintiff's bank account at JP Morgan Chase Bank, N.A. ("Chase Bank") ending in -0565 (the "-0565 Account"). *See,* Complaint ¶14, Answer ¶6*.,* Rauste Aff. Ex. 7; Rattner Aff. Ex. 5.

14. As alleged in the Complaint and admitted in the Answer, on behalf of Business Finland, the Debtor would submit financial information to Business Finland's parent organization in Finland. *See,* Complaint ¶15-16, Answer ¶6-8. Throughout the year, Business Finland would estimate its funding needs for the upcoming two to three months, and the Debtor would request that estimated sum from Business Finland's parent company in Finland. *See,* J. Colangelo Tr. 306:4-309:25, 336:14-337:20

15. Business Finland's parent company from time to time sought from its U.S. subsidiary the supporting bank statements to audit Business Finland's use of the funds, to which the Debtor would send what she portrayed to be bank statements for the -0565 Account showing use of the funds previously requested for Business Finland's business and expenses. *See* J. Colangelo Tr.: 365:14-367:22, 370:2-371:2.

16. The Debtor admitted under oath that the statements she provided were not the actual bank statements from the -0565 Account. *See* J. Colangelo Tr. 374:15-20. Specifically, she testified as follows:

> Q: You didn't provide the actual bank statements for 0565 to Business Finland; correct?
> A: Yes.
> Q: That is correct?
> A: Yes.

5

> Q: Instead, you provided them with a document that you created, one of which is [Rauste Aff. Ex. 8]; right?
> A: It's printed out from Chase online.

*See,* J. Colangelo Tr. 376:19-377:5; Rauste Aff. Ex. 8.

17. Business Finland's Chase Bank June 2015 statement for the -0565 Account showed payments to American Express totaling $177,521.44 in June 2015 alone, including a $71,766.45 payment on June 12, 2015, and several payments of over $15,000 in the second half of June 2015. *See* Rattner Aff. Exs. 21 & 22. Yet, the sham account statement created and submitted by the Debor for June 2015 does not contain any entries after June 12, 2015 and does not show any entries for payments to American Express at all. *Compare* Rattner Aff. Exs. 21 & 22 *with* Rauste Aff. Ex. 8. Also missing from the sham account statements were numerous transfers made from the -0565 Account directly into the Debtor's bank account. *Compare* Rattner Aff. Ex. 21 *with* Rauste Aff. Ex. 8. For example, the Debtor transferred $4,936.90 to her bank account on June 4, 2015, and transferred another $7,965.00 to that same bank account on June 12, 2015. *See* Rattner Aff. Ex. 21. Yet, the sham account statement she provided to Business Finland's office in Helsinki for June 2015 did not show any transfer to the Debtor's bank account t on June 4, 2015, and showed a transfer of just $2,267.73—not $7,965.00—to the Debtor's bank account on June 12, 2015. *Compare* Rattner Aff. Ex. 21 *with* Rauste Aff. Ex. 8.

18. Another significant discrepancy between the -0565 Account statements and the sham account statements are the amounts paid as Business Finland's operating expenses. In June 2015, the -0565 Account statements show a payment of $21,920.57 to Paychex for payroll on June 12, and a payment of $11,103.04 to Paychex for taxes on June 15. *See* Rattner Aff. Exs. 21 & 22. The corresponding sham statement shows the $21,920.57 payroll debit on June 12, 2015, but it also contains an additional $98,109.00 as "payroll" that is not reflected on the -0565 Account

6

statements. *Compare* Rattner Aff. Exs. 21 & 22 *with* Rauste Aff. Ex. 8. The Debtor admitted in her deposition testimony that she input this $98,109 number into the sham account statement, but she could not explain how she calculated it or justify why she input it. *See* J. Colangelo Tr. 380:23-383:9. Similarly, the Debtor could not justify why she input "CAN ACH PMT" debits of $17,659.62 and $49,091.73 in the June 2015 sham statement or how she arrived at these numbers. Nor could she identify any backup documentation that could support these figures, which are not reflected anywhere in the -0565 Account statements. *See* J. Colangelo Tr. 385:5-386:12. *Compare* Rattner Aff. Exs. 21 & 22 *with* Rauste Aff. Ex. 8.

19. Business Finland's true and correct Chase bank statements for the -0565 Account revealed that between 2011 through 2017, the Debtor misappropriated $4,820,781.66 of Business Finland's funds to herself or her benefit by direct payments to the Debtor directly, America Express for payment on the Debtor's account, Chase for payment on the Debtor's Chase card and Chase loan:

   a. 2011: $329,523.77;
   b. 2012: $642,034.61;
   c. 2013: $648,618.64;
   d. 2014: $651,109.20;
   e. 2015: $1,086,970.46;
   f. 2016: $938,644.67; and
   g. 2017: $523,880.31.

*See,* Rauste Aff. Ex. 2, Schedule 2.

20. Some examples of the Debtor's use of theses misappropriated monies included (i) paying for her family's membership at Hampshire Country Club between 2013-2018 (in excess of $85,000), (ii) purchasing herself a pearl necklace, bracelet, and earrings ($38,118.13), and a Rolex watch for her husband, (iii) taking her family on a vacation to southern France in the summer of 2014 (costing in excess of $100,000), and (iv) funding renovations on the New Rochelle

7

Residence. *See,* Rauste Aff. Ex. 3; Rattner Aff. Exs. 6, 7, 8, 9, 10, 13, 15; R. Colangelo Tr. 21:11-23:8, 23:14-28:23, 30:3-31:25, 36:22-54:16, 58:21-59:13; J. Colangelo Tr. 101:19-110:13, 156:16-23, 158:11-159:4, 176:5-17, 177:25-178:15, 179:5-21, 284:17-288:16, 289:19-290:7, 291:16-301:14.

21. The conceded under oath that she routinely took money from the -0565 Account to pay her personal American Express bills:

> Q: … You're not disputing that you took money from the [Business Finland] account 0565 and paid your American Express? You're not disputing that; right?
>
> A: No. That's a fact, yes.

J. Colangelo Tr. 153:21-24.

## PREVIOUS JUDICIAL FINDINGS OF FACT AND LAW

22. On December 21, 2020, the court in the State Court Action entered the Decision and Order on Business Finland's State Court SJ Motion, which contained findings of fact, conclusions of law, and a verdict against the Debtor. *See,* Decision and Order, Ex. G.

23. The Decision and Order granted Business Finland's State Court SJ Motion on its claims for faithless servant and constructive trust. *Id.*

24. In the State Court's Decision and Order, the court noted the standard for a faithless servant, *i.e.,* "one who owes a duty of fidelity to a principal and … engaged in repeated acts of disloyalty." *Id.* At pgs. 2-3.

25. In reaching a decision on Business Finland's faithless servant claim, the court found that "the evidence submitted by Plaintiff established that the Debtor engaged in repeated disloyal conduct against Plaintiff" and that "a persistent pattern of disloyalty throughout [the Debtor]'s employment with plaintiff." *Id.* at pg. 2, 7, & 8.

8

26.     In reaching a decision on Business Finland's faithless servant claim, the court found that "[the Debtor] failed to rebut plaintiff's prima facie showing that she misappropriated funds." *Id.*

27.     In reaching a decision on Business Finland's constructive trust claim, the court found that plaintiff proved all of the elements required, to wit: "(1) a confidential or fiduciary relationship, (2) a promise, (3) a transfer in reliance thereon, and (4) unjust enrichment." *Id.*

28.     In reaching a decision on Business Finland's constructive trust claim, the court found that "the signatory power entrusted by plaintiff to [the Debtor] was used by [the Debtor] to divert funds from plaintiffs Chase account." *Id.*

29.     In reaching a decision on Business Finland's faithless servant and constructive trust claims, the court found that:

> ln 2015 alone, [the Debtor] charged $31,716 to pay an electrician, A Perfect Goldman Electrical Contractors, spent $19,294 on new appliances from Leibert's Royal Green in White Plains, and paid $24,672 for bathroom fixtures and furnishings with Consolidated Plumbing. [The Debtor and her husband] paid for these improvements by using [the Debtor]'s American Express credit card and writing checks from [her husband]'s company Black Labrador. However, the money to pay the American Express bill and to fund Black Labrador came from Plaintiff's 0565 account. [The Debtor and her husband] charged at least $402,164.08 of expenses on [the Debtor]'s American Express card related to improving their residence. [The Debtor] would pay the American Express bill directly from Plaintiff's 0565 account or route money to her AmEx account.
> …
>
> On July 13, 2015, [the Debtor] charged $4,620 to her AmEx card to pay California Closets. Then, on July 17,2015, [the Debtor] charged $4,130.06 to her AmEx card to pay Sunshine Hardwood Floors. With a week, [the Debtor] repeatedly transferred funds from Plaintiff's 0565 account to the [Debtor and her husband]'s personal account and used most of these transferred funds to pay off her AmEx card. Specifically, on July 22, 2015, [the Debtor] transferred $4,935.78 from the 0565 account to the [Debtor and her husband]'s personal account. Two days later, on July 24,2015, she paid $3,259.17 to her personal AmEx bill. On July 27,2015, [the Debtor] transferred $2,957.89 from the 0565 account to the [Debtor and her husband]'s personal account. That same day, she paid $2,230.34 to her personal AmEx bill. [The Debtor] paid her American Express credit card with funds from

9

> plaintiffs 0565 account that she routed through the [Debtor and her husband]'s personal account.
>
> …
>
> The funds used to pay the AmEx card [of Black Labrador] came from Plaintiff's 0565 account. For example, on April 8, 2016, Ronald wrote a $5,000 check to Monti Contractors from Black Labrador for installation of a slate patio. Funds for this check came from payments [the Debtor] made to Black Labrador via its PayPal account days earlier on April 5 and 6, 2016 using her AmEx card. [The Debtor] then paid for these charges on her AmEx bill with funds obtained from plaintiffs 0565 account. The payments [the Debtor] made to Black Labrador with her AmEx credit card did not serve any legitimate business purpose for Plaintiff.
>
> Black Labrador also received funds from Plaintiff routed through the defendants' personal account. For example, on or about October 3, 2016, [the Debtor] transferred $9,834.56 from the plaintiffs 0565 account to the [Debtor and her husband]'s account. On October 3 and 4, 2016, [the Debtor] transferred $3,500 to Black Labrador's PayPal account, which Ronald then deposited into Black Labrador's bank account. He then wrote a $3,500 check to pay for the roof.
>
> …
>
> The 0565 account statements show payments to AmEx totaling $177,521.44 in June 2015, including a $71,766.45 payment on June 12, 2015, and several payments of over $15,000 in the second half of June 2015. However, the falsified statement for June 2015 does not contain any entries after June 12, 2015 and does not show any entries for payments to AmEx. Also missing were numerous transfers made from the 0565 account directly into the [Debtor and her husband]'s account, [the Debtor] transferred $4,936.90 to the [Debtor and her husband]'s account on June 4, 2015, and another $7,965.00 to that same bank account on June 12, 20'15. The purported account statement she provided to Helsinki omit the transfer to the [Debtor and her husband]'s account on June 4th and showed a transfer of $2,267.73 (not $7,965.00) to the [Debtor and her husband]'s account on June 12th.

*Id.,* at pages 4-6.

30.    In reaching a decision on Business Finland's faithless servant and constructive trust claims, the court found that "[the Debtor] acknowledged that in June 2015 she provided a bank statement to the Helsinki office which was not entirely accurate because she wanted to be paid for all of her expenses." *Id.*, at page 7.

31.    In making these finding and coming to these conclusions of law, the court relied upon and cited Plaintiff's evidence, which the Court found that the Debtor failed to rebut:

10

- [The Debtor] was one of Plaintiff's employees responsible for providing administrative support to the New York and Connecticut offices.

- Plaintiff is owned by a Finnish organization that was a subsidiary of the Finnish government.

- [The Debtor] never contributed any capital to Plaintiff and was not a shareholder or director.

- [The Debtor] opened Plaintiff's bank account at Chase Bank and was an authorized signatory.

- Plaintiff entrusted [the Debtor] to handle its funding requests and disbursements and therefore, she had full access to Plaintiff's bank account.

- Plaintiff received its funding by requesting funds from a subsidiary of the Finnish government.

- The Finnish government provided all the funds necessary to meet Plaintiff's payroll and operational needs.

- In order to receive the funding, Plaintiff submitted financial information for a yearly budget prepared by a subsidiary of the Finnish government in Finland.

- Based upon the financial information provided, Plaintiff would estimate its funding needs for the following two or three months and request that estimated sum.

- [The Debtor] would request funds from the financial department of Plaintiffs parent company in Finland which would transfer the requested funds into Plaintiff's Chase bank account ending in 0565.

- The Finnish government required Plaintiff to submit bank records showing disbursement of monies provided.

- The only way [the Debtor] could have obtained funds in excess of Plaintiff's budget would have been by manipulating the bank records.

- No one in the Helsinki office had any reason to suspect that [the Debtor] had sent them anything different from what they requested.

- [The Debtor] created and sent fraudulent bank statements that hid her theft of Plaintiff's assets.

*Id.*

11

32. The State Court made its findings in Plaintiff's favor despite Debtor's assertions in her opposition to the State Court SJ Motion "that she never siphoned any funds from Plaintiff" and "she never used monies belonging to Plaintiff for her person gain or benefit." *Id.*

33. The Decision and Order awarded Business Finland $522,732.79 against the Debtor on its faithless servant claim. *Id.*, at page 8.

34. The Decision and Order awarded Business Finland the imposition of a constructive trust against the New Rochelle Residence on its constructive trust claim. *Id.*, at page 9.

35. Neither the Debtor, nor any other defendant, appealed any portion of the Decision and Order or the court's findings of fact, conclusions of law, and verdict. *See,* Exhibit A.

36. The time for the Debtor to appeal the ruling in the Decision and Order has expired. *Id*.

Dated: Scarsdale, New York
       October 2, 2024

                                                KIRBY AISNER & CURLEY LLP
                                               *Attorneys for Business Finland USA, Inc.*
                                               700 Post Road, Suite 237
                                               Scarsdale, New York 10583
                                               (914) 401-9500

                                               By: */s/ Julie Cvek Curley*
                                                     Julie Cvek Curley, Esq.