NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

In re:

JAANA COLANGELO,

       Debtor.

Chapter 7

Case No. 23-22355 (KYP)

---------------------------------------------------------------x

BUSINESS FINLAND USA, INC.,

       Plaintiff,

  -against-

JAANA COLANGELO,

       Defendant.

Adv. Pro. No. 23-07036 (KYP)

---------------------------------------------------------------x

## MEMORANDUM DECISION GRANTING
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**APPEARANCES:**

KIRBY AISNER & CURLEY LLP
*Co-Counsel for Business Finland USA, Inc.*
700 Post Road, Suite 237
Scarsdale, NY 10583
  By:    Julie Cvek Curley, Esq.
           Of Counsel

CERMELE & WOOD, LLP
*Co-Counsel for Business Finland USA, Inc.*
2 Westchester Park Drive, Suite 110
White Plains, NY 10604
  By:    Michael R. Wood, Esq.
           Of Counsel

JAANA COLANGELO
*Pro Se Defendant*

**HONORABLE KYU YOUNG PAEK**
**UNITED STATES BANKRUPTCY JUDGE**

# INTRODUCTION

Plaintiff Business Finland USA, Inc. ("Business Finland") commenced this adversary proceeding against Debtor-Defendant Jaana Colangelo ("Debtor") seeking a finding that debts owed to Business Finland are excepted from discharge pursuant to section 523(a)(2), (4), and (6) of the Bankruptcy Code. Business Finland now moves for summary judgment on its claims ("Motion"),[1] and the Debtor, proceeding *pro se*, objects to the Motion.[2] For the reasons stated, the Motion is GRANTED, and the Business Finland Claim (defined *infra*) is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

# JURISDICTION

This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* (M-431), dated January 31, 2012 (Preska, C.J.) referring bankruptcy cases and proceedings to the Bankruptcy Judges of the Southern District of New York. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

---

[1] *See Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment*, dated Oct. 3, 2024 ("Business Finland Brief") (ECF Doc. # 16); *Plaintiff's Statement of Undisputed Facts Pursuant to Fed. R. Bankr. P. 7056 and Fed. R. Civ. P. 56 in Support of Motion for Summary Judgment*, dated Oct. 2, 2024 ("Plaintiff Fact Statement") (ECF Doc. # 15); and *Plaintiff's Reply Memorandum of Law in Further Support of Motion for Summary Judgment*, dated Jan. 9, 2025 ("Business Finland Reply") (ECF Doc. # 28). "ECF Doc. # _" refers to documents filed on the electronic docket of this adversary proceeding. "ECF Main Case Doc. # _" refers to documents filed on the electronic docket of the Debtor's Chapter 7 bankruptcy case. "ECF p. _" refers to the page number imprinted across the top of the page by the Court's electronic filing system.

[2] *See Opposition to Motion for Summary Judgment*, dated Dec. 16, 2024 ("Debtor Brief") (ECF Doc. # 27).

2

## BACKGROUND

**A.    The State Court Action**

On June 20, 2018, Business Finland commenced an action against the Debtor in the Supreme Court of the State of New York, County of Westchester ("State Court") styled *Business Finland USA, Inc. v. Jaana Bernadotte-Colangelo, et al.*, Index No. 59629/2018 ("State Court Action").  (Plaintiff Fact Statement, Ex. A (docket of the State Court Action).)  Business Finland's complaint contained the following five causes of action: (i) faithless servant ("Faithless Servant Claim"), (ii) fraud, (iii) conversion, (iv) breach of fiduciary duty, and (v) imposition of a constructive trust ("Constructive Trust Claim") on real property owned by the Debtor and her spouse located at 66 Wilson Drive, New Rochelle, New York 10801 ("New Rochelle Residence").  (*Id.*, Ex. B (amended complaint in the State Court Action).)

On June 1, 2020, Business Finland filed a motion for partial summary judgment on the Faithless Servant Claim and the Constructive Trust Claim, (*id.*, Ex. A at docket entries 162-253), and the Debtor, through counsel, filed opposition on July 31, 2020. (*Id.*, Ex. A at docket entries 255-306.)  The State Court granted Business Finland's motion by decision and order issued on December 21, 2020 ("State Court Decision").[3] Based on the evidence provided by the parties, the State Court set forth the facts leading to the filing of the State Court Action, and a summary of the findings follows.

Business Finland was established in 2006 by the Finnish Foreign Trade Association and is wholly owned by a subsidiary of the Finnish government.  (State Court Decision at 3.)  The Debtor was employed to provide administrative support to

---

[3]    A copy of the State Court Decision is attached to the Plaintiff Fact Statement as Exhibit G.

3

Business Finland's New York and Connecticut offices. (*Id.*) The Debtor opened a bank account at Chase Bank for Business Finland ("Chase Bank Account") and was an authorized signatory. (*Id.*)

Business Finland received funding from the Finnish government to meet payroll and pay operational expenses. (*Id.*) Based on financial information prepared by a Finnish government subsidiary, Business Finland would estimate its funding needs for a two- or three-month period and request that amount from the subsidiary. (*Id.*) The Debtor was responsible for making these requests. (*Id.*) Business Finland "entrusted [the Debtor] to handle its funding requests and disbursements and therefore, she had full access to [the Chase Bank Account]." (*Id.*; *see also id.* at 4 ("[The Debtor] was expected to handle [Business Finland's] funding requests and disbursements as a key part of her job.").)

From time to time, Business Finland's parent company requested Chase Bank Account statements to audit Business Finland's use of disbursed funds. (*Id.* at 4.) Providing this documentation to the parent company was the Debtor's responsibility. (*Id.*) Rather than sending true and accurate copies of Chase Bank Account statements, the Debtor "created and sent fraudulent bank statements that hid her theft of [Business Finland's] assets." (*Id.*) By providing falsified bank records in response to the audit requests, the Debtor hid (i) transfers from the Chase Bank Account to pay the Debtor's American Express credit card bills, (ii) transfers from the Chase Bank Account to the Debtor's personal bank account, (iii) transfers from the Chase Bank Account to an entity owned by the Debtor's spouse called Black Labrador, and (iv) cash withdrawals from the Chase Bank Account. (*Id.* at 4; *see also id.* at 5 (describing examples of funds flowing from the Chase Bank Account to pay for the Debtor's expenses).) From 2011 through

4

2017, the Debtor misappropriated over $4 million from Business Finland. (*Id.* at 4.) The Debtor used the funds from the Chase Bank Account to, among other things:

- fund a family vacation to southern France costing over $100,000;
- cover country club membership fees;
- purchase jewelry; and
- pay for extensive renovations and repairs to the Debtor's home costing hundreds of thousands of dollars.

(*Id.* at 4-5.)

As an example of the Debtor's conduct in falsifying bank records, the State Court analyzed the June 2015 Chase Bank Account statement submitted by the Debtor to the parent company. (*Id.* at 5.) In the version altered by the Debtor, the Chase Bank Account statement (i) omitted payments to the Debtor's American Express account totaling $177,521.44, (ii) omitted a June 4 transfer of $4,936.90 to the Debtor's bank account, (iii) reduced a June 12 transfer to the Debtor's bank account from $7,965.00 to $2,267.73, (iv) included an inflated disbursement to fund payroll in amount of $98,109.00. (*Id.* at 5-6.) The State Court also noted that the July 2015 Chase Bank Account statement, which was doctored by the Debtor, omitted $90,946.05 in payments to the Debtor's American Express account and inflated amounts disbursed by Business Finland to fund payroll and related taxes. (*Id.* at 6.)

Based on the foregoing, the State Court granted summary judgment in favor of Business Finland on its Faithless Servant Claim and Constructive Trust Claim. "Under what is commonly referred to as the faithless servant doctrine, one who owes a duty of fidelity to a principal and who is faithless in the performance of his or her services is generally disentitled to recover his or her compensation, whether commissions or salary." (*Id.* at 2-3 (quoting *City of Binghamton v. Whalen*, 141 A.D.3d 145, 147 (N.Y.

5

App. Div. 2016)) (internal quotation marks and alterations omitted).) "Where defendants engaged in repeated acts of disloyalty, complete and permanent forfeiture of compensation, deferred or otherwise, is warranted under the faithless servant doctrine." (*Id.* at 3 (citing *William Floyd Union Free Sch. Dist. v. Wright*, 61 A.D.3d 856, 859 (N.Y. App. Div. 2009)).) The State Court found that the Debtor engaged in "a persistent pattern of disloyalty" throughout her employment with Business Finland. (*Id.* at 7.) Therefore, the State Court granted Business Finland summary judgment on the Faithless Servant Claim and ordered forfeiture of compensation paid to the Debtor in the amount of $522,732.79. (*Id.*)

Next, a "constructive trust may be imposed when property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest," and the "elements needed for the imposition of a constructive trust are (1) a confidential or fiduciary relationship, (2) a promise, (3) a transfer in reliance thereon, and (4) unjust enrichment." (*Id.* at 8 (citing *Liu v. Chen*, 133 A.D.3d 644, 644-45 (N.Y. App. Div. 2015) and quoting *Cerabono v. Price*, 7 A.D.3d 479, 480 (N.Y. App. Div. 2004)).) The Debtor argued that the imposition of a constructive trust was improper because the New Rochelle Residence was not purchased with stolen funds. (*Id.*) The Court rejected that argument and found that Business Finland "demonstrated prima facie entitlement to the imposition of a constructive trust by establishing that the signatory power entrusted by [Business Finland to the Debtor] was used by [the Debtor] to divert funds from [the Chase Bank Account] and that those funds were improperly used to pay for significant renovations to the [New Rochelle

6

Residence]." (*Id.* at 9 (citing *Galasso, Langione & Botter, LLP v. Galasso*, 176 A.D.3d 1176 (N.Y. App. Div. 2019)).)[4]

Neither the Debtor nor any other defendant in the State Court Action appealed the State Court Decision. (Plaintiff Fact Statement ¶¶ 35-36.)

**B.    The Bankruptcy Filing, the Adversary Proceeding, and this Motion**

The State Court Action was scheduled to proceed to trial – on the causes of action not resolved by the State Court Decision as well as to calculate damages corresponding to the Constructive Trust Claim – on May 15, 2023. (Plaintiff Fact Statement ¶ 6.) Six days before the start of trial, the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code. Howard P. Magaliff has been appointed the Chapter 7 trustee for the Debtor's bankruptcy estate.

On November 13, 2023, Business Finland filed a proof of claim ("Business Finland Claim") comprised of (i) $522,732.79 based on the State Court's Faithless Servant Claim judgment, (ii) $993,000.00 based on an estimated value of the New Rochelle Residence over which the State Court granted Business Finland a constructive trust,[5] and (iii) $4 million for each of the three causes of action that were outstanding at the time of the bankruptcy filing, *i.e.*, fraud, conversion, and breach of fiduciary duty. (*See* Claim No. 2 and accompanying rider.)

---

[4]    On March 16, 2021, the State Court issued a corresponding *Interim Judgment* in the amount of $522,732.79 in favor of Business Finland. A copy of this judgment is attached as an exhibit to the complaint. (ECF Doc. # 1, Ex. F.)

[5]    By order dated July 12, 2024, this Court approved the sale of the New Rochelle Residence for a purchase price of $960,000.00. (*See Order Authorizing the Sale of Real Property at 66 Wilson Drive, New Rochelle, New York Free and Clear of Liens and Interests Pursuant to Sections 363(b) and (f) of the Bankruptcy Code*, dated July 12, 2024 (ECF Main Case Doc. # 63).)

7

On December 14, 2023, Business Finland commenced this adversary proceeding by filing its *Complaint Objecting to Dischargeability of Debt Pursuant to 11 U.S.C. §§ 523(a)(2), (4) and (6) and 523(c)* ("Complaint") (ECF Doc. # 1).  The factual allegations in the Complaint generally track the facts as set forth in the State Court Decision.  (*See* Complaint ¶¶ 7-40.)  The Complaint contains three counts, each seeking a finding that the Business Finland Claim is excepted from discharge under a subsection of 11 U.S.C. § 523(a).  Count I asserts that the Business Finland Claim is excepted from discharge under 11 U.S.C. § 523(a)(2)(A) because the Debtor obtained money and property from Business Finland by false pretenses, false representations, and/or fraud.  (*Id*. ¶¶ 44-54.)  Count II asserts that the Business Finland Claim is excepted from discharge under 11 U.S.C. § 523(a)(4) because the Debtor engaged in fraudulent conduct while acting as a fiduciary to Business Finland.  (*Id*. ¶¶ 55-65.)  Count III asserts that the Business Finland Claim is excepted from discharge under 11 U.S.C. § 523(a)(6) because the Debtor's conduct caused willful and malicious injury to Business Finland.  (*Id*. ¶¶ 66-75.)

Business Finland filed the instant Motion on October 3, 2024, the Debtor filed her response on December 16, 2024, Business Finland filed its reply on January 9, 2025, and the Court heard oral argument on January 30, 2025 and took the matter under advisement.

## DISCUSSION

A.    **Summary Judgment Standard**

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable hereto pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any

8

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of establishing that no genuine issue of material fact exists. *Bustamante v. KIND, LLC*, 100 F.4th 419, 432 (2d Cir. 2024) (quoting *Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 108 (2d Cir. 2023)). "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (quoting *Niagara Mohawk Power Corp. v. Hudson River-Black Regulating Dist.*, 673 F.3d 84, 94 (2d Cir. 2012)).

Once the movant has carried its initial burden, "the nonmovant must set forth specific facts showing that there is a genuine issue for trial." *Bustamante*, 100 F.4th at 432 (citation omitted). When deciding whether a genuine dispute exists as to a material fact, all ambiguities must be resolved, and all reasonable inferences must be drawn, in favor of the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). However, "[c]onclusory allegations, conjecture, and speculation are insufficient to create a genuine issue of fact." *Shannon v. New York City Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003) (quoting *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998)) (alteration omitted); *accord Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (When the moving party has carried its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.").

B.  **Collateral Estoppel**

Principles of collateral estoppel, also known as issue preclusion, apply in bankruptcy cases and can be used in nondischargeability actions to prevent re-litigation of issues already decided. *Grogan v. Garner*, 498 U.S. 279, 284 n. 11 (1991)

9

("[C]ollateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."); *Denton v. Hyman* (*In re Hyman*), 320 B.R. 493, 499 (Bankr. S.D.N.Y.) ("There is no doubt that the doctrine of collateral estoppel applies in bankruptcy proceedings generally and in proceedings arising under Section 523(a) of the Bankruptcy Code in particular."), *aff'd*, 332 B.R. 32 (S.D.N.Y. 2005), *aff'd on other grounds*, 502 F.3d 61 (2d Cir. 2007), *cert. denied*, 555 U.S. 1097 (2009).

A "federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). "The New York law of collateral estoppel employs a two-part test: a party is estopped from relitigating an issue when that issue was necessary to the resolution of the prior action, and the party against whom estoppel is invoked had a full and fair opportunity to contest that issue in the previous litigation." *PenneCom B.V. Merrill Lynch & Co., Inc.*, 372 F.3d 488, 491 (2d Cir. 2004) (citing *Schwartz v. Pub. Adm'r*, 246 N.E.2d 725, 729 (N.Y. 1969)).

In the sections that follow, the Court will analyze whether the Debtor had a full and fair opportunity to contest the issues in the State Court Action, and then discuss whether matters resolved in the State Court Action preclude the Debtor from relitigating those issues in this nondischargeability proceeding.

### 1.    Full and Fair Opportunity

Factors that a court may consider when determining whether there was a full and fair opportunity to contest the issues in the prior litigation include "the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a

23-07036-kyp    Doc 38    Filed 05/19/25    Entered 05/19/25 10:53:08    Main Document
                                    Pg 11 of 15

compromise verdict, differences in the applicable law and foreseeability of future litigation." *King v. Fox*, 418 F.3d 121, 130 (2d Cir. 2005) (quoting *Gilberg v. Barbieri*, 423 N.E.2d 807, 809 (N.Y. 1981)), *certifying questions to* 851 N.E.2d 1184 (N.Y. 2006); *accord Bd. of Educ. v. N.Y. State Human Rights Appeals Bd.*, 106 A.D.2d 364, 365 (N.Y. App. Div. 1984).

Here, the Court finds that the Debtor had a full and fair opportunity to contest the relevant issues. In the State Court Action, Business Finland brought serious claims sounding in fraud, conversion, and breach of fiduciary duty against the Debtor seeking millions of dollars in damages as well as the imposition of a constructive trust on the Debtor's home. Although the Debtor is proceeding *pro se* in this adversary proceeding, she was represented by counsel in the State Court Action who, based on a review of the State Court Action docket, vigorously opposed Business Finland's summary judgment motion, which resulted in the issuance of the State Court Decision. (*See* Plaintiff Fact Statement, Ex. A at docket entries 255-306 (State Court Action docket sheet showing that, on July 31, 2020, Debtor's counsel filed an objection to Business Finland's summary judgment motion as well as three affidavits attaching dozens of exhibits).) Last, the State Court Action was before the New York Supreme Court, which is unquestionably a competent court with expertise in handling civil actions under New York law.

### 2. Section 523(a)(2)(A) Nondischargeability Claim

Section 523(a)(2)(A) of the Bankruptcy Code provides an exception to discharge of any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . ."

To establish that money was obtained by a false representation, the creditor must establish the following: (1) the debtor made a false representation, (2) at the time the representation was made, the debtor knew it was false, (3) the debtor made the representation with the intention of deceiving the creditor, (4) the creditor justifiably relied on the representation, and (5) the creditor sustained loss or damage as the proximate consequence of the false, material misrepresentation.  *Chase Bank, U.S.A., N.A. v. Vanarthos* (*In re Vanarthos*), 445 B.R. 257, 262 (Bankr. S.D.N.Y. 2011).  The "intent to deceive" need not be express and can be "inferred when the totality of the circumstances presents a picture of deceptive conduct by the debtor . . . ." *Parklex Assocs. v. Deutsch* (*In re Deutsch*), 575 B.R. 590, 600 (Bankr. S.D.N.Y. 2017) (citation and internal quotation marks omitted).  Whether the creditor's reliance was justifiable depends on "the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case . . . ." *Sharmat v. Gallen* (*In re Gallen*), 559 B.R. 349, 356 (Bankr. S.D.N.Y. 2016) (quoting *Field v. Mans*, 516 U.S. 59, 71 (1995)).

      Here, the findings of the State Court in granting Business Finland summary judgment on the Faithless Servant Claim and Constructive Trust Claim satisfy the elements of the nondischargeability claim under 11 U.S.C. § 523(a)(2)(A).  The State Court found that (i) the Debtor altered Chase Bank Account statements when responding to audit requests by Business Finland's parent company (State Court Decision at 4-6; *see also id.* at 7 ("[The Debtor] acknowledged that in June 2015[,] she provided a bank statement to the Helsinki office which was not entirely accurate because she wanted to be paid for all of her expenses.")), (ii) by altering the Chase Bank Account statements, the Debtor concealed the fact that she was misappropriating Business Finland's assets (*id.* at 4), (iii) the Debtor used funds from the Chase Bank

12

Account to pay for expensive home renovations and repairs, go on an expensive family vacation, cover country club membership fees, buy jewelry, among other things (*id.* at 4-5), and (iv) the Debtor was given signatory authority over the Chase Bank Account, and Business Finland "entrusted her to handle its funding requests and disbursements . . . ." (*Id.* at 3; *see also id.* at 4 ("No one in the Helsinki office had any reason to suspect that [the Debtor] had sent them anything different from what they requested.").) These findings conclusively establish the elements of a nondischargeability claim under section 523(a)(2)(A). The Debtor knew she was making false representations when she altered the Chase Bank Account statements and provided the doctored statements in response to the audit requests. The circumstances support an "intent to deceive" because she repeatedly sent falsified bank statements and used the misappropriated funds to pay for high-priced personal expenses. Business Finland justifiably relied on the Debtor to respond accurately to the audit requests because she was entrusted to handle that task as part of her job.

Therefore, the matters pertinent to the nondischargeability claim under section 523(a)(2)(A) have been resolved by the State Court Decision, the Debtor is estopped from relitigating those matters in this adversary proceeding, and the Business Finland Claim is excepted from discharge under 11 U.S.C. § 523(a)(2)(A).[6]

---

[6] Because the Court finds that the Business Finland Claim is excepted from discharge under 11 U.S.C. § 523(a)(2)(A), it need not address whether it is excepted from discharge under 11 U.S.C. § 523(a)(4) or (6).

13

**C.     The Debtor's Opposition**

The Debtor's main argument in opposition to the Motion is that she often covered Business Finland's expenses, including by using her American Express credit card, and reimbursed herself by transferring corresponding amounts from the Chase Bank Account.  She asserts that this arrangement was known by her supervisors.  (Debtor Brief at ECF pp. 3-4, 6.)

The Debtor made the same argument in the State Court Action.  (State Court Decision at 7 ("[The Debtor] states that she charged business rents, meeting expenses, hotel expenses, airline flights, phones, and training on her personal AmEx card.  She attests that [her supervisors] were aware of this usage. . . . [The Debtor] states that once her expenses were approved, she issued checks to herself and transferred the approved amounts directly to her AmEx account or to [her and her spouse's] personal bank account.  She attests that this was not a secret and she never hid this procedure from anyone.").)  But the State Court ultimately rejected the Debtor's argument:

> Based upon the foregoing, the Court finds a persistent pattern of disloyalty throughout [the Debtor's] employment with [Business Finland].  [The Debtor] has failed to rebut [Business Finland's] prima facie showing that she misappropriated funds.
>
> . . .
>
> Defendants' assertion that [the Debtor's] expenditures on her AmEx card were for [Business Finland's] business purposes for which she was entitled to reimbursement does not raise an issue of fact.  [Business Finland] demonstrated that [the Debtor] engaged in repeated acts of disloyalty.  Whether [the Debtor] also made legitimate business charges on her personal AmEx card is of no moment.

14

(State Court Decision at 7, 8.)[7]

Having unsuccessfully raised this issue in the State Court Action, the Debtor is estopped from relitigating the issue in this proceeding. *Buechel v. Bain*, 766 N.E.2d 914, 919 (N.Y. 2001) ("Collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue raised in a prior action or proceeding and decided against that party or those in privity.") (citation omitted), *cert. denied*, 535 U.S. 1096 (2002).

## CONCLUSION

For the reasons stated, the Motion is GRANTED, and the Business Finland Claim is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A). Any arguments raised by the parties that are not specifically addressed herein have been considered by the Court and rejected or rendered moot by the Court's ruling. Counsel to Business Finland shall submit an order consistent with this Memorandum Decision via the Court's eOrders system. The Clerk is directed to email a copy of this Memorandum Decision to the Debtor.[8]

Dated:    May 19, 2025
          Poughkeepsie, New York

/s/ *Kyu Y. Paek*
Honorable Kyu Y. Paek
United States Bankruptcy Judge

---

[7]    The State Court noted, however, that the Debtor's "entitlement to reimbursement for business expenses legitimately made on her AmEx card may be relevant to the remaining causes of action and will be determined at trial." (State Court Decision at 8.)

[8]    The mailing address listed for the Debtor on the docket of this adversary proceeding is the address for the New Rochelle Residence. The Debtor no longer resides at the New Rochelle Residence as it was sold in July 2024. (*See supra* note 5.)

15