UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In re:                                          Chapter 11

**4452 BROADWAY MAZAL LLC,**                    Case No.: 23-11832 (LGB)

                              Debtor.
-----------------------------------------------------------X


### PLAN SUPPLEMENT


**LEECH TISHMAN**                    **KRISS & FEUERSTEIN LLP**
**ROBINSON BROG, PLLC**
Attorneys for the Debtor             Attorneys for 4452 Broadway 1 LLC
875 Third Avenue                     360 Lexington Avenue, Suite 1200
New York, New York 10022             New York, New York 10017
Tel. No. 212 603 6300                Tel. No. 212 661 2900 ext 4110
Fred B. Ringel, Esq.                 Jerold C. Feuerstein, Esq.
Clement Yee, Esq.

New York, New York
March 6, 2024

<u>Exhibit A</u>

**Form Purchase Agreement**

**THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT ONCE IT IS SIGNED BY BOTH PARTIES. ONCE THIS CONTRACT IS FULLY SIGNED THERE SHALL BE NO FURTHER ATTORNEY REVIEW.**

## REAL ESTATE PURCHASE AND SALE CONTRACT

**Date of Contract:** _____, 2024

**Address:** _____

**PIN:** _____

### PURCHASER INFORMATION:

NAME(S)     _____

*(Print Name)*

_____

*(Print Name)*

ADDRESS     _____

_____

_____

PHONE:     Work _____    Home _____

Cell _____

E-mail or Fax: _____

SOCIAL SECURITY
OR FEIN NUMBER:    _____

PURCHASER'S ATTORNEY:    _____

ADDRESS:    _____

_____

PHONE:    _____ Fax: _____

1

**SELLER INFORMATION**:

NAME:            _____

ADDRESS:       _____

                 _____

     **1.**    **PURCHASE & DESCRIPTION OF REAL ESTATE**: Seller agrees to sell to Purchaser (also referred to herein as "Purchaser") and Purchaser agrees to purchase from Seller the real estate and improvements, if any, situated in State of New York, County of New York, commonly known as 4452 Broadway, New York, New York, together with any and all buildings, improvements, fixtures owned by the Seller located in, on, attached to the Property; and all privileges and appurtenances pertaining thereto including any right, title and interest, if any, of Seller in and to adjacent streets, or rights-of-way, Seller's interest in any assignable warranties or guaranties relating to the Property and fixtures located on, attached to, or used in connection with the Property; all of the above hereinafter collectively called "Property", legally described in Exhibit A attached hereto and made a part hereof.

**2.**    **PURCHASE PRICE**:

| | | |
|---|---|---|
| (A) | High Bid Price | $_____ |
| (B) | Extras, if, any | $_____ |
| (C) | **Total Purchase Price** (equals A + B + C) | $_____ |
| (D) | **Initial Earnest Money** (10% of Total Purchase Price) | $_____ |
| (E) | **Additional Earnest Money** (equals D x 10% - E) | $_____ |

**3.**    **PRICE AND TERMS**:

(A)    The **Total Purchase Price** is the amount set forth in (D) above (the "Total Purchase Price"), payable in U.S. dollars by Purchaser as follows:

    (1)    **Initial Earnest Money** shall be paid in the form of a certified or cashier's check made payable to the order of **Leech Tishman Robinson Brog, PLLC, as Escrow Agent** in the amount set forth in (E) above.  The Initial Earnest Money is due upon delivery of the Agreement signed by Purchaser, receipt of which is hereby acknowledged and shall be nonrefundable.

    (2)    The **Balance of the Purchase Price ("Balance")**, plus or minus prorations and closing adjustments, if any, is due at the closing of this transaction ("Closing") and must be paid by immediately available funds by wire transfer or Purchaser's official cashier's check from a bank, made payable to the Escrow Agent or such other payee(s) as Seller may hereafter designate in writing.

2

(B)    Delivery of the deed and acceptance by Purchaser at the Closing shall be deemed to be full performance and discharge of all obligations (either express or implied) on the part of Seller to be performed pursuant to this Agreement. No representation, warranty or agreement, express or implied, of Seller shall survive the Closing except those which are herein specifically stated to survive the Closing.

**4.    ALL-CASH TRANSACTION:**        This is an all-cash sale and purchase; and is NOT contingent upon obtaining financing.  Although the Purchaser may apply to a lending institution of Purchaser's choice for a loan, Purchaser has been advised that Purchaser's receipt of a commitment from such a lending institution, or Purchaser's acceptance of said commitment, shall not in any way alter Purchaser's obligations under this Purchase and Sale Agreement.

**5.    CLOSING:** Closing shall occur at 10:00 a.m. on or before **45 Days from entry of the Bankruptcy Courts confirmation order approving the sale, but in all events no later than April 15, 2024,** at the offices of the Escrow Agent, or at such other location that Seller may designate.

**6.    CLOSING DOCUMENTS:**
    A.    **At the Closing, Seller shall deliver to Purchaser, at Seller's sole cost and expense, the following:**

        (1)    A duly executed and acknowledged <u>Bargain and Sale</u> Deed Without Covenants Against Grantor's Acts in recordable form conveying title in fee simple to all of the real estate, free and clear of any and all liens, encumbrances, and subject to the Permitted Title Exceptions attached hereto as Exhibit B;

        (2)

        (3)    Internal Revenue Code reporting requirements or disclosure including FIRPTA;

        (4)    Intentionally omitted;

        (5)    Seller shall by written assignment assign all Service Contracts, if any to Purchaser, (except any such contracts which by their terms are non-assignable) and Purchaser shall accept such assignment and agrees to discharge and assume all of the obligations and duties of landlord under the Service Contracts which accrue or arise for the period from and after the closing. Purchaser hereby agrees to indemnify and hold Seller harmless from any claims, demands, suits, damages and expenses related to the obligations and duties of landlord under the Service Contracts from and after the Closing Date.  This indemnity shall survive the closing of this transaction;

        (6)    Customary transfer declarations;

        (7)    Bill of Sale, without warranties, for any personal property being transferred free of liens or encumbrances;

        (8)    All other documents that are reasonably customary to close this transaction; in accordance with the terms and conditions of this Agreement; and

3

(9)     Letters to the tenants advising the tenants of the sale and directing all future rents to be sent to Purchasers or as Purchaser may direct.

B.     **At the Closing, Purchaser shall:**

(1)     Pay the cash portion of the Purchase Price including prorations and adjustments, if any;

(2)     If Purchaser is a corporation or a limited liability company, deliver to Seller:

(a)     Certified resolutions of the board of directors of Purchaser (or managing member) authorizing all the transactions contemplated by this Agreement;

(b)     An incumbency certificate with respect to those officers (or managing member) of Purchaser executing any documents or instruments in connection with the transactions contemplated herein; and

(c)     Certificate of Good Standing for the entity acquiring title from the Secretary of State or other appropriate governmental office of the state in which the entity was formed.

(3)     If the entity acquiring title is a partnership, deliver to Seller a certified copy of the partnership agreement and all appropriate resolutions, partnership consents and evidence of authority of said entity;

(4)     Execute such other and further documents necessary to close this transaction; in accordance with the terms and conditions of this Agreement;

(5)     If Purchase Money Financing is applicable:
(a)     Execute and deliver to Seller the Financing Documents; and
(b)     Deliver an ALTA Mortgage Title Insurance Policy insuring the Mortgage as a first lien on the Property subject only to the Permitted Title Exceptions.

(6)     Execute an assignment and assumption agreement pursuant to which Purchaser assumes any obligations of Seller under the Leases and any other contracts relating to the Property.

(7)     Obtain, at Purchaser's expense, an Owner's Policy of Title Insurance (the "Title Policy") issued by Title Insurance Company in the full amount of the Purchase Price, dated as of closing, insuring Purchaser's title to the real estate subject only to the Permitted Title Exceptions listed on Exhibit B, the standard printed exceptions and additional exceptions contained in the usual form of Owner's Title Policy;

7.     <u>**SALES EXPENSES TO BE PAID IN CASH AT OR PRIOR TO CLOSING:**</u>

4

**A.     SELLER'S EXPENSES:**  All costs of releasing and recording any release of Mortgage required by the terms of this Agreement;; 1/2 of any escrow fee, if Purchaser does not use commercial lending for the purchase (otherwise the title escrow fee is payable by Purchaser); real estate brokerage fees pursuant to the written agreement between Hilco Real Estate and Seller and other expenses stipulated to be paid by Seller under provisions of this Agreement. State, County, or City transfer taxes (if any) shall be paid by the party that typically pays these expenses based on where the property is located.

**B.     PURCHASER'S EXPENSES:**  All costs of the Owner's Title Policy, all recording costs of the Mortgage, the Deed, and the Collateral Documents, the full amount of any money lender's escrow, the expense of ALTA Mortgage Title Policy, if Purchaser is using a commercial lender for the purchase it will pay the entire title company escrow fee (otherwise, 1/2 of any escrow fee); and expenses stipulated to be paid by Purchaser under other provisions of this Agreement. State, County, or City transfer taxes (if any) shall be paid by the party that typically pays these expenses based on where the property is located.

8.     <u>**PRORATIONS AND ADJUSTMENTS:**</u>  The following shall be prorated and adjusted between Seller and Purchaser as of the time of closing, except as otherwise expressly provided herein:

A.     Water, electricity, sewer, gas, telephone and other utility charges based, to extent practicable, on final meter readings and/or final invoices.

B.     Amounts paid or payable under any assigned maintenance or other service contracts shall be prorated as of the time of closing.

C.     Accrued general real estate taxes shall be prorated as of the time of closing.  If such bills are not available, then such taxes shall be prorated on the basis of 100% of the most recent ascertainable tax bills.

D.     Special Assessments - If at the time of Closing, the Premises are affected by an assessment which is or may become payable in installments, then only those installments due prior to the date of the Closing shall be paid by the Seller, and all installments due subsequent to Closing shall be paid by Purchaser.

E.     Such other items that are customarily prorated in transactions of this nature shall be ratably prorated as of the Closing Date.  Except as expressly provided herein, all prorations shall be final.  The covenants and agreements set forth in this Paragraph shall survive the closing.

F.     As of Closing, Purchaser shall be responsible for the transfer of accounts and establishment of all utility services to the real estate to the name of Purchaser, including the making of any new utility deposits with the utility providers.  Seller shall be entitled to receive a refund of utility service deposits, if any, covering the period prior to the Closing Date.

4863-1954-4743, v. 3

G.      Real estate tax assessment reductions, tax refunds, and credits received after the Closing Date after deducting the expenses of collection thereof including attorney's fees which obligation shall survive the Closing that are:

      1.      attributable to the tax year during which the Closing Date occurs and thereafter shall be prorated between Seller and Purchaser;

      2.      attributable to all tax years before the year in which the Closing occurs belong to the Seller.

9.      **DEFAULTS**:  A failure to appear at the time and place stated in the notice of the Closing Date, a failure to pay any amounts due hereunder (including Earnest Money), a failure to enter into, execute and deliver customary closing documents, or Purchaser's failure to perform any obligation of Purchaser required under the Contract and any supplemental written agreements made a part of the Contract shall be a default. In the event of Purchaser's default, the Earnest Money shall be retained or collected by Seller as liquidated damages, and not as a penalty as Seller's sole and exclusive remedy in law and equity. In the event Seller shall fail or be unable to deliver title to the Property as herein provided on account of title defects which Purchaser is unwilling to waive, this Contract shall be terminated and the Earnest Money shall be returned forthwith to Purchaser. The return of Purchaser's funds shall be Purchaser's sole and exclusive remedy in the event of any form of Seller's default under this real estate contract. **UNDER NO CIRCUMSTANCES SHALL SELLER BE LIABLE FOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES**.

10.     **WARRANTY DISCLAIMERS**:

(A)     **THE PROPERTY IS BEING SOLD "AS IS".   SELLER HEREBY EXCLUDES AND DISCLAIMS ANY AND ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING BY WAY OF ILLUSTRATION AND NOT LIMITATION, WARRANTIES OF FITNESS FOR PARTICULAR PURPOSE, HABITABILITY AND MERCHANTABILITY. SELLER NEITHER ASSUMES NOR AUTHORIZES ANY PERSON TO ASSUME FOR SELLER ANY LIABILITY IN CONNECTION WITH THE SALE OR USE OF THE PROPERTY, AND THERE ARE NO AGREEMENTS OR WARRANTIES, EITHER ORAL OR WRITTEN, COLLATERAL TO OR AFFECTING THIS CONTRACT, THE PROPERTY. PURCHASER ACKNOWLEDGES THAT NO WARRANTY CLAIMS FOR ANY MATTERS RELATING TO THE CONDITION OF THE PROPERTY MAY BE MADE AGAINST SELLER. PURCHASER FURTHER ACKNOWLEDGES THAT PURCHASER'S ACCEPTANCE OF SELLER'S DISCLAIMER OF WARRANTIES, INCLUDING THE DISCLAIMER OF ANY APPLICABLE IMPLIED WARRANTY OF HABITABILITY, IS AN ESSENTIAL PART OF THE AGREEMENT REACHED BETWEEN PURCHASER AND SELLER.**

(B)     Purchaser acknowledges and understands that if a dispute arises with Seller and the dispute results in a lawsuit, Purchaser will not be able to rely on the Implied Warranty of Habitability described above, as a basis for suing Seller or as the basis of a defense if Seller sues Purchaser.

(C)     Seller shall not be responsible for any incidental or consequential damages.

6

(D)    The Property is being sold, and Purchaser shall accept same, subject to any and all violations of law, rules, regulations, ordinances, orders or requirements noted in or issued by any Federal, state, county, municipal or other department or governmental agency having jurisdiction against or affecting the Premises or the Property whenever noted or issued (collectively, "**Violations**") and any conditions which could give rise to any Violations.  Seller shall have no obligation to cure or remove any Violations.

11.    **POSSESSION:** Purchaser shall not take possession of the Premises or commence any work prior to delivery of the Deed and full compliance with the terms of this Agreement.  The Property shall be delivered at Closing.  Purchaser shall be responsible for installing new locks on the Property immediately after the Closing, and Purchaser shall hold Seller and Seller's representatives and agents harmless from any and all damages, claims, liens, liabilities, costs, injuries and expenses of any kind that may be made against Seller as a result of Purchaser's failure to install new locks on the property.

12.    **BROKER'S COMMISSION**: Seller shall cause to be paid a broker's commission to **Hilco Real Estate, LLC** (hereinafter referred to as "Seller's Broker") in accordance with its Exclusive Real Estate Auction Agreement.  Seller and Purchaser agree that all Broker's commissions shall be paid at Closing. Purchaser represents to Seller that it has not dealt with any broker, finder or like agent in connection with this transaction other than Seller's Broker.  Purchaser hereby indemnifies and holds Seller harmless from and against any and all claims for any commission, fee or other compensation by any person or entity, other than Seller's Broker, who shall claim to have dealt with Purchaser in connection with the sale of the Premises and for any and all costs incurred by Seller in connection with any such claims including, without limitation, reasonable attorneys' fees and disbursements.  This Paragraph and disbursement instructions may not be amended or revoked without the prior written consent of Seller's Broker, unless superseded by an Order of the Bankruptcy Court.

13.    **AGENCY DISCLOSURE:** Seller's Broker, and their agents represent Seller.  Seller's Broker owes duties of trust, loyalty and confidence to Seller only.  While Seller's Broker has a duty to treat Purchaser honestly and fairly at all times, Seller's Broker is the Seller's agent and is acting on behalf of Seller and not Purchaser.  Any Cooperating Broker will be recognized as a Purchaser's agent (Purchaser's Broker). BY SIGNING BELOW, PURCHASER ACKNOWLEDGES PRIOR TIMELY NOTICE BY SELLER'S BROKER THAT SELLER'S BROKER IS SELLER'S AGENT.

14.    **CONSULT YOUR ATTORNEY:**   THIS IS INTENDED TO BE A LEGALLY BINDING AGREEMENT.  READ IT CAREFULLY.  NO REPRESENTATION OR RECOMMENDATION IS MADE BY SELLER, BROKER OR THEIR AGENTS OR EMPLOYEES AS TO THE LEGAL SUFFICIENCY, LEGAL EFFECT, OR TAX CONSEQUENCES OF THIS DOCUMENT OR THE TRANSACTION RELATING THERETO.  THESE ARE QUESTIONS FOR YOUR ATTORNEY.  CONSULT YOUR ATTORNEY BEFORE SIGNING.  NEITHER THE SELLER NOR THE BROKER CAN GIVE YOU ANY LEGAL ADVICE.

15.    **DISCLAIMER:**

4863-1954-4743, v. 3

(A)     EXCEPT AS OTHERWISE SPECIFICALLY STATED IN THIS AGREEMENT, SELLER HEREBY SPECIFICALLY DISCLAIMS ANY WARRANTY, GUARANTY, OR REPRESENTATION, ORAL OR WRITTEN, PAST, PRESENT, OR FUTURE OF, AS TO, OR CONCERNING THE NATURE AND CONDITION OF THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL, AND GEOLOGY, AND THE SUITABILITY THEREOF AND OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH PURCHASER MAY ELECT TO CONDUCT THEREON.

(B)     EXCEPT AS SPECIFICALLY STATED IN THIS AGREEMENT, SELLER HAS NOT MADE AND IS NOT MAKING ANY REPRESENTATION OR WARRANTY REGARDING MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE, ENVIRONMENTAL CONDITIONS, ZONING OR THE AVAILABILITY OF UTILITIES OR PERMITS.

(C)     PURCHASER ACKNOWLEDGES THAT HAVING BEEN GIVEN A SUFFICIENT OPPORTUNITY TO INSPECT THE PROPERTY, AND TO REVIEW OTHER MATERIAL GIVEN TO PURCHASER, PURCHASER IS RELYING SOLELY ON ITS OWN INVESTIGATION OF THE PROPERTY IN ARRIVING AT ITS DECISION TO PURCHASE THE PROPERTY AND HAS NOT RELIED UPON ANY PLANS SELLING BROCHURES, ADVERTISEMENTS, REPRESENTATIONS WARRANTES, STATEMENTS OR ESTIMATES OF ANY NATURE WRITTEN OR ORAL BY SELLER OR SELLER'S AGENT IN DECIDING TO PURCHASE THE PROPERTY AT THE STATED PRICE.

(D)     PURCHASER IS PURCHASING THE PROPERTY IN ITS PRESENT CONDITION, "AS IS, WHERE IS", AND SELLER HAS NO OBLIGATION TO CONSTRUCT ANY IMPROVEMENTS THEREON, OR TO PERFORM ANY OTHER ACT REGARDING THE PROPERTY, EXCEPT AS EXPRESSLY PROVIDED HEREIN.

(E)     ANY FACTUAL INFORMATION SUCH AS PROPERTY DIMENSIONS, SQUARE FOOTAGE, OR SKETCHES SHOWN TO PURCHASER OR SET FORTH HEREIN ARE OR MAY BE APPROXIMATE AND PURCHASER REPRESENTS TO SELLER THAT THEY HAVE INSPECTED AND VERIFIED THE FACTS AND INFORMATION PRIOR TO THE EXECUTION OF THIS AGREEMENT.  NO LIABILITY FOR ANY INACCURACIES, ERRORS OR OMISSIONS IS ASSUMED BY THE SELLER, THE BROKER OR OTHER AGENTS.

(F)     THE REAL ESTATE SALESPERSONS AND BROKERS IN THIS TRANSACTION HAVE NO EXPERTISE WITH RESPECT TO ENVIRONMENTAL MATTERS.  PROPER INSPECTIONS OF THE PROPERTY BY QUALIFIED EXPERTS ARE ENCOURAGED TO DETERMINE WHETHER OR NOT THERE ARE ANY CURRENT OR POTENTIAL ENVIRONMENTAL CONCERNS RELATING TO THE PROPERTY.  THE REAL ESTATE SALESPERSONS AND BROKERS IN THIS TRANSACTION HAVE NOT MADE, NOR WILL THEY MAKE, ANY REPRESENTATIONS, EITHER EXPRESSED OR IMPLIED, REGARDING THE EXISTENCE OR NON-EXISTENCE OF ANY SUCH ENVIRONMENTAL CONCERNS IN OR ON THE PROPERTY.

(G)     PURCHASER HAS BEEN MADE AWARE OF ANY DEED RESTRICTIONS THAT ARE ATTACHED TO THIS PROPERTY AND IS BUYING SUBJECT TO THOSE DEED RESTRICTIONS.

4863-1954-4743, v. 3

16.    **RISK OF LOSS:**        If any material portion of the property is damaged or destroyed prior to the Closing Date, as determined by Seller is its sole discretion, Seller shall give Purchaser written notice thereof.  Purchaser shall have the option, within ten (10) business days after receipt of such written notice, to either (a) terminate this Agreement, or (b) consummate this Agreement in accordance with its terms.  In any event, Seller shall not be deemed in default under this Agreement as a result of such damage or destruction.  Purchaser shall be deemed to have waived his right to terminate this Agreement if Purchaser does not notify Seller in writing of it election to terminate this Agreement within ten (10) business days after receipt of Seller's written notice of material damage.  If within five (5) business days after Seller's receipt of such written notice of termination by Purchaser, Seller delivers to Purchaser Seller's written agreement to repair at its sole cost and expense all such damage, then any such termination notice given by Purchaser shall be rendered ineffective.  In such event, the Closing Date shall be deemed automatically extended until such time as the Seller completes the repairs, upon completion Purchaser will be given notice that such repair is complete and will have five (5) business days to close.  Purchaser shall not be entitled to any insurance proceeds or obtain any rights with respect to any claims Seller may have with respect to the Property.

17.    **DISCLOSURES:**        Purchaser acknowledges and agrees that Purchaser has received and had adequate opportunity to read and understand all disclosures made available by Seller, Broker, or auctioneer regarding the property.  Purchaser shall execute at or prior to Closing, all federal, state and local disclosures concerning the property that Purchaser is required to execute under applicable laws and regulations.  Purchaser acknowledges that any information provided by or on behalf of Seller with respect to the Property and Disclosures were obtained from a variety of sources and neither Seller, Seller's Broker, nor Auctioneer have verified such information and make no representation as to the accuracy or completeness of said information.

18.    **OCCUPIED PROPERTY:**        Seller makes no representations or warranties as to whether the property is occupied as of the Closing Date.  Purchaser expressly waives any right to terminate this Agreement based on the status of the occupancy of the Property.  Purchaser acknowledges that Purchaser may be subject to any federal, state, or local laws in regards to protecting the rights of tenants who may be occupying the Property.

19.    **MISCELLANEOUS:**

(A)    NOTICES:  All notices and demands required hereunder shall be made in writing and the mailing of notice by first class registered, certified, overnight mail, courier delivery or facsimile transmission with a copy by regular first class mail to Seller or Purchaser or to their attorneys at the addresses given in this Contract shall be sufficient.

(B)    TIME IS OF THE ESSENCE OF THIS CONTRACT

(C)    NO RECORDING**:**  Neither this Agreement nor any type of memorandum thereof shall be recorded with the office of the Recorder of Deeds or with any other governmental agency, and any purported recordation or filing hereof by Purchaser shall constitute a default on the part of Purchaser.

4863-1954-4743, v. 3

(C)    ENTIRE AGREEMENT:  This Agreement constitutes the entire agreement between the parties as to the subject matter hereof and supersedes all prior understandings and agreements.  There are no representations, agreements arrangements or understandings oral or written between the parties, including the Broker, relating to the subject matter contained in this Agreement which is not fully expressed or referred to herein.

(D)    SUCCESSORS AND ASSIGNS:

(1)    The provisions of this Agreement shall bind and inure to the benefit of Purchaser and Purchaser's heirs, legal representatives, successors and permitted assigns and shall bind and inure to the benefit of the Seller and its successors and assigns.  This Agreement may not be assigned by Purchaser without prior written consent of Seller.

(2)    The Seller's refusal to consent to an assignment shall not entitle Purchaser to cancel this Agreement nor give rise to any claim for damages against Seller.

(E)    PURCHASER ASSIGNMENT TO TAKE TITLE:  Purchaser may request the conveyance be made to another, persons or entity ("Nominee"), upon notification in writing delivered to Seller at least ten days prior to the date of Closing.  Purchaser's designation of a Nominee to take title to the Property shall not relieve the Purchaser of any obligation hereunder.  Any additional transfer taxes due as a result of the designation of a Nominee shall be Purchaser's obligation to pay.

(F)    JOINT PURCHASERS:  The term "Purchaser" shall be read as "Purchasers" if more than one person is the Purchaser of the Property, in which case their obligations shall be joint and several.

(G)    FURTHER ASSURANCES:  Either party shall execute, acknowledge and deliver to the other party such instruments and take such other actions, in addition to the instruments and actions specifically provided for herein at any time and from time to time after execution of this Agreement whether before or after the Closing, as such other party may reasonably request in order to effectuate the provisions of this Agreement or the transaction contemplated herein or to confirm or perfect any right to be created or transferred hereunder or pursuant to this transaction, provided that neither party shall be required to incur any material expense in connection therewith.

(H)    SEVERABILITY:  If any clause or provision of this Agreement is held to be invalid or unenforceable by any court of competent jurisdiction as against any person or under any circumstances, the remainder of this Agreement and the applicability of any such clause or provision to other persons or circumstances shall not be affected thereby.  All other clauses or provisions of this Agreement, not found invalid or unenforceable shall be and remain valid and enforceable.

(I)    STRICT COMPLIANCE:  Any failure by either party to insist upon strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of any of the provisions hereof, irrespective of the number of violations or breaches that may occur, and each party, notwithstanding any such failure, shall have the right thereafter to insist upon strict performance by the other of any and all of the provisions of this Agreement.

(J)   GOVERNING LAW:   The terms and provisions of this Agreement shall be governed in accordance with the laws of the State of New York, without application of the conflict of laws principles thereof.  Each of Seller and Purchaser hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of the Bankruptcy Court, in any action or proceeding arising out of or relating to or connected with this Agreement, or for recognition or enforcement of any judgment. Each of Seller and Purchaser hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding shall be heard and determined in Bankruptcy Court.  Each of Seller and Purchaser agrees that a final judgment in any such action or proceeding will be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  This Agreement shall be construed without regard to or aid of canons requiring construction against the party drawing this Agreement.

(K)   WAIVER OF JURY TRIAL:  **EXCEPT AS PROHIBITED BY LAW, THE PARTIES SHALL, AND THEY HEREBY DO, EXPRESSLY WAIVE TRIAL BY JURY IN ANY LITIGATION ARISING OUT OF, CONNECTED WITH, OR RELATING TO THIS AGREEMENT OR THE RELATIONSHIP CREATED HEREBY**.  With respect to any matter for which a jury trial cannot be waived, the parties agree not to assert any such claim as a counterclaim in, nor move to consolidate such claim with, any action or proceeding in which a jury trial is waived.

(L)   ATTORNEYS FEES**:**  A party to this Agreement who is the prevailing party in any legal proceeding against any other party brought under or with respect to this Agreement or the transaction contemplated hereby shall be additionally entitled to recover court costs and reasonable attorney's fees from the non-prevailing party.

(M)   GENDER: A reference in this Agreement to any one gender, masculine, feminine or neuter, includes the other two, and the singular includes the plural, and vice versa, unless the context requires otherwise.

(N)   CERTAIN REFERENCES:  The term "herein", "hereof" or "hereunder" or similar terms used in this Agreement refer to this entire Agreement and not to the particular provision in which the term is used.  Unless otherwise stated, all references herein to paragraphs, subparagraphs or other provisions are references to paragraph, subparagraphs or other provisions of this Agreement.

(O)   SINGULAR ALSO MEANS PLURAL:  Any singular word or term herein shall also be read as in the plural whenever the sense of this Agreement may require it.

(P)   CAPTIONS:  The captions in this Agreement are for convenience and reference only and in no way define, limit or describe the scope of this Agreement or the intent of any provision hereof.

(Q)   NO ORAL CHANGES:  This Agreement cannot be changed or any provision waived orally. ANY CHANGES OR ADDITIONAL PROVISIONS OR WAIVERS MUST BE SET FORTH IN A RIDER ATTACHED HERETO OR IN A SEPARATE WRITTEN AGREEMENT SIGNED BY THE PARTIES.

(R)    DATE OF PERFORMANCE:  If any date for performance hereunder falls on a Saturday, Sunday or other day which is a federal holiday or holiday under the laws of the state in which the Property is located, the date for such performance shall be the next succeeding business day.

(S)    NO PRESUMPTION REGARDING DRAFTING:  It is acknowledged and presumed that the substance and form of this Agreement have been fully reviewed by the parties hereto and approved as to form by their respective counsel.  It is further acknowledged and agreed that no presumption shall exist against either party hereto by virtue of this Agreement being considered to have been drafted by counsel for either party thereto.

(T)    COUNTERPARTS:  This Agreement may be executed in multiple counterparts all of which when taken together shall constitute an Agreement for the sale of Real Estate under the laws of this state.  It is binding upon and inures to the benefit of the parties hereto and their respective heirs, devisees, executors, administrators, successors and assigns, and may be canceled, modified or amended only by a written instrument executed by both the Seller and the Purchaser.

(U)    COUNTERPART FACSIMILE EXECUTION:  For purposes of, executing this Agreement, a document signed and transmitted by facsimile machine shall be treated as an original document.  The signature of any party thereon shall be considered as an original signature, and the document transmitted shall be considered to have the same binding legal effect as an original signature on an original document.  At the request of either party, any facsimile document shall be re-executed by both parties in original form.  No party hereto may raise the use of a facsimile machine or the fact that any signature was transmitted through the use of a facsimile machine as a defense to the enforcement of this Agreement or any amendment executed in compliance with this Paragraph.  This Paragraph does not supersede the requirements of the "Notices" Paragraph.

(V)    FIRPTA: Seller represents and warrants to Purchaser that Seller is not a "foreign person", as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA").

**20.    IRREVOCABLE OFFER**: Purchaser further acknowledges that this Agreement is executed and delivered by Purchaser pursuant to an auction conducted on behalf of Seller.  In consideration of the following: (a) preserving the integrity of the auction process and assuring that all offers are made in conformity therewith and  in reliance thereon; (b) the  monies spent by Seller to arrange  for the auction; (c) the  opportunity of the Purchaser  to bid for the Property; (d) the  promise by the  Seller to sell the Property  to Purchaser  if this Agreement  is accepted  by Seller as hereinafter provided and (e) for other   good and valuable  consideration, the  receipt   and adequacy  of which is expressly acknowledged by Purchaser,  including the  mutual  promises  made by each  party, this Agreement constitutes an irrevocable offer to  purchase by Purchaser  in accordance with this Agreement  which cannot  be revoked  by Purchaser prior to 5:00 p.m. local time, (based on the  location of the  Property) on  the five (5) business  day  following Purchaser  Execution  of this Agreement ("Irrevocable Deadline").

Such offer to purchase shall not be deemed accepted by Seller until executed by Seller or Seller's duly authorized agent prior to revocation thereof. Notice from Seller or its duly authorized agent to accept or reject Purchaser's offer under this Paragraph may be given pursuant to the Notices Paragraph in this Agreement or by telephone and confirmed at a later date by notice given pursuant to Notices Paragraph in this Agreement.

Failure of Seller or its duly authorized agent to notify Purchaser on or prior to the Irrevocable Deadline that Seller accepts or rejects Purchaser's offer shall not constitute acceptance or rejection by Seller of Purchaser's offer, but Purchaser's irrevocable offer shall thereafter become revocable. Execution hereof by Seller prior to the Irrevocable Deadline shall constitute acceptance by Seller without the need for any further notification by Seller to Purchaser and the date of Purchaser's execution hereof, if any, shall be the Effective Date.

**21.**   **APPROVAL BY BANKRUPTCY COURT:**  Purchaser understands, acknowledges and agrees that the sale contemplated by this Agreement shall be made in accordance with the Bankruptcy Code with the premises to be sold free and clear of all liens, claims, taxes and encumbrances of whatever kind or nature (the "Liens") with such Liens, if any, if valid, to attach to the net proceeds of the Purchase Price, that is net of attorney's fees and expenses of the sale reflected in this Agreement, subject to the provisions of any Order approving this sale issued by the Bankruptcy Court (the "Approval Order").

 This Purchase and Sale Agreement is expressly subject to and contingent upon the entry of an Order, pursuant to the Bankruptcy Code, approving the sale of the premises by the Bankruptcy Court in **Case Number 1:23-bk-11832 (LGB)** pending in the United States Bankruptcy Court Southern District of New York.  Seller shall promptly file its application for the Approval Order upon receipt of a fully executed counterpart of this Agreement and receipt of the Contract Deposit.  Purchaser shall cooperate in good faith with the Seller to secure the Approval Order, including, but not limited to, attending the hearing to consider the entry of the Approval Order, and, if necessary, testifying before the Bankruptcy Court and providing documentary evidence as to Purchaser's financial wherewithal to perform the obligations of Purchaser under this Agreement.  In the event that the Bankruptcy Court enters an Order denying the entry of the Approval Order, Seller shall return the Contract Deposit to Purchaser within five (5) business days of the entry of such Order and this Agreement shall be deemed to be null and void ab initio.

**22.**   **EXHIBITS**:  The attached Exhibits shall be and hereby are made a part of this Agreement.  Any Exhibits attached hereto containing blank spaces, which exhibit is to be executed and delivered at the Closing shall be completed in accordance with the terms and provisions contained herein, prior to or at the time of execution and delivery thereof.  The exhibits marked below are attached to this Agreement and incorporated herein:

☒   Legal Description – Exhibit A
☒   Permitted Title Exceptions – Exhibit B

IN WITNESS WHEREOF, this Agreement has been executed as of the Effective Date.

SELLER:                                        PURCHASER:

By: _____            _____
Name:                                          Signature

                                               _____
                                               Print Name

Effective Date: _____              _____
                                               Signature

                                               _____
                                               Print Name

                                               Date of Execution:
                                               _____

14

## EXHIBIT "A"

## Legal Description

## EXHIBIT "B"

## Permitted Title Exceptions

A.    General Exceptions

   (1)    Rights or claims of parties in possession not shown by the public records

   (2)    Encroachments, overlaps, boundary line disputes, and any other matters which would be disclosed by an accurate survey and inspection of the premises.

   (3)    Easements or claims of easements not shown by the public records and existing water, mineral, oil and exploration rights.

   (4)    Any lien, or right to lien for services labor or material heretofore or hereafter furnished imposed by law and not shown by the public records.

   (5)    Taxes or special assessments which are not shown as existing liens by the public records.

   (6)    Restrictions upon the use of the premises not appearing in the record chain of title.

B.    Specific Exceptions

   (1)    Covenants, Conditions, Easements and Restrictions of record.

   (2)    General Real Estate Taxes not due and payable and subsequent years.

   (3)    Special Assessments and installments due after the date of Closing.

   (4)    Acts of Purchaser

   (5)    Drainage Ditches and Laterals

16

<u>Exhibit B</u>

Release of Mortgage Lender and Guarantors

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In re:                                                Chapter 11

**4452 BROADWAY MAZAL LLC,**                          Case No.:  23-11832 (LGB)

                                    Debtor.
-----------------------------------------------------------X

## <u>MUTUAL RELEASE</u>

   In consideration of their cooperation and assistance with the implementation
of the Plan of Reorganization, as may be amended ("Plan") of 4452 Broadway Mazal
LLC ("Debtor"), as soon as practicable after an order confirming the Plan
("Confirmation Order") becomes a Final Order and before the commencement of the
auction (if any),there shall be a mutual release between Nir Amsel and Amir Hasid
(together, "Guarantors") on the one hand and 4452 Broadway 1 LLC ("Mortgage
Lender") on the other.

   The Debtor and the Mortgage lender being parties to:

  a. Amended and Restated Note in the principal amount of $35,500,000
   ("Building Loan Note");
  b. Amended and Restated Mortgage and Security Agreement entered into to
   secure repayment of the Building Loan Note, encumbering the Property,
   which was recorded on January 30, 2019 in the Register's Office under
   CRFN: 2019000034951 ("Building Loan Mortgage");
  c. Amended and Restated Note in the principal amount of $10,000,000
   ("Land Loan Note");
  d. Amended and Restated Mortgage and Security Agreement entered into to
   secure repayment of the Land Loan Note, encumbering the Property,
   which was recorded on January 30, 2019 in the Register's Office under
   CRFN: 2019000034948 ("Land Loan Mortgage"),
  e. Amended and Restated Note in the principal amount of $3,000,000
   ("Project Loan Note"); and
  f. Amended and Restated Mortgage and Security Agreement entered into to
   secure repayment of the Project Loan Note, encumbering the Property,
   which was recorded on January 30, 2019 in the Register's Office under
   CRFN: 2019000034954 ("Project Loan Mortgage") (a through f,
   collectively, the "Note and Mortgage")

As further security for the Note and Mortgage, the Guarantors entered:

a. Conditional Guaranty dated January 23, 2019 of the Building Loan Note and Building Loan Mortgage;

b. Debt Service and Carry Guaranty dated January 23, 2019 of the Building Loan Note and Building Loan Mortgage;

c. Conditional Guaranty dated January 23, 2019 of the Land Loan Note and Land Loan Mortgage;

d. Debt Service and Carry Guaranty dated January 23, 2019 of the Land Loan Note and Land Loan Mortgage;

e. Conditional Guaranty dated January 23, 2019 of the Project Loan Note and Project Loan Mortgage; and

f. Debt Service and Carry Guaranty dated January 23, 2019 of the Project Loan Note and Project Loan Mortgage (a through f, the "Guarantees").

Additionally, the Debtor, Mortgage Lender, Guarantors, among other parties entered into a Forbearance Agreement dated July 11, 2022 with respect to the Note and Mortgage and Guarantees ("Forbearance Agreement," together with the Note and Mortgage, Guarantees, and any other agreements amongst the parties thereto executed in connection therewith, the "Guaranteed Obligations").

The Guarantors, the Debtor, its members, and anyone purporting to act or acting on its behalf, shall release and discharge Mortgage Lender (or its assignee, designee or nominee), its respective predecessors and successors-in-interest, including all shareholders, assigns, affiliates, partners, officers, directors, from any and all actions, causes of action, controversies, liabilities, obligations, rights, suits damages, judgments, claims, and demands whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertible directly or derivatively, existing or hereafter arising, in law, equity, or otherwise, as it relates to the Guaranteed Obligations (as it relates to the Mortgage Lender) other than from the obligations of Mortgage Lender (or is assignee, designee, or nominee) under the Plan, the Confirmation Order and any order(s) of this Court.

Mortgage Lender its members, and anyone purporting to act or acting on its behalf shall release and discharge the Guarantors from any and all actions, causes of action, controversies, liabilities, obligations, rights, suits damages, judgments, claims, and demands whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertible directly or derivatively, existing or hereafter arising, in law, equity, or otherwise, as it relates to the Guaranteed Obligations (as it relates to the Guarantors) other than from the obligations of the Guarantors under the Plan, the Confirmation Order and any order(s) of this Court.

This release may be executed in one or more counterparts, each of which shall be an original and all of which together shall constitute one and the same instrument. The parties agree that facsimile or electronic signatures shall be binding and shall have the same effect as original signatures.

This release may not be changed orally and copies shall have the same effect as originals for all purposes.

**IN WITNESS WHEREOF**, the parties have executed this release on the ___ day of January ___, 2024.

4452 Broadway 1 LLC


By:_____


_____
Nir Amsel, in his individual capacity



_____
Amir Hasid, in his individual capacity

4895-9072-3231, v. 4