**FARRELL FRITZ, P.C.**
Martin G. Bunin
Darren A. Pascarella
622 Third Avenue, 37th Floor
New York, New York 10017
Telephone: (212) 687-1230
Facsimile: (646) 237-1810

*Counsel to Broadway Construction Group, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
In re:                                                             Chapter 11

4452 BROADWAY MAZAL LLC,                                           Case No. 23-11832 (LGB)

                              Debtor.
------------------------------------------------------------------x

**OBJECTION OF BROADWAY CONSTRUCTION GROUP, LLC TO**
**JOINT PLAN OF LIQUIDATION PROPOSED BY 4452 BROADWAY**
**MAZAL LLC AND 4452 BROADWAY 1 LLC**

Broadway Construction Group, LLC ("BCG"), a creditor of the above-captioned debtor (the "Debtor"), by and through its undersigned counsel, files this objection to the Joint Plan of Liquidation Proposed by 4452 Broadway LLC and 4452 Broadway 1 LLC [Docket No. 76] (the "Plan"), and in support of its objection, respectfully states as follows:

**BACKGROUND**

1. In October 2019, the Debtor retained BCG as its construction manager to provide construction management services in connection with the construction and development of the Debtor's sole asset, the real property located at 4452 Broadway, New York, New York 10040 (the "Property"). Due to the Debtor's failure to pay BCG for the services and materials it furnished in connection with the construction of the Property, BCG obtained a mechanic's lien against the Property in the amount of $1,292,613.51 (as extended, the "Mechanic's Lien").

2.  The Debtor states that it was in the process of developing the Property into a mixed-use development consisting of modern retail spaces and luxury condominiums, but construction on the Property ceased due to a lack of funding.[1] As a result, on November 16, 2023, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").

3.  On January 25, 2024, BCG filed a proof of claim in the amount of $2,009,643.80, of which $1,292,613.51 was secured by the Property by virtue of is Mechanic's Lien and $717,030.29 was unsecured. *See* Claims Register, Claim 11-1.

**A.    The Disclosure Statement, the Plan and Bid Procedures**

4.  On February 14, 2024, the Debtor filed (i) the Disclosure Statement for Joint Plan of Liquidation Proposed by 4452 Broadway Mazal LLC and 4452 Broadway 1 LLC (the "Disclosure Statement") [Docket No. 77], (ii) the Plan, and (iii) Bid Procedures for Auction Sale (the "Bid Procedures") [Docket No. 78].[2]

5.  Pursuant to the terms of the Plan, the Debtor proposed to sell the Property pursuant to the Bid Procedures to fund payments under the Plan. As provided in the Bid Procedures, the deadline to submit a Qualified Bid for the purchase of the Property was March 13, 2024 at 4:00 p.m., and the Debtor was to notify bidders whether their bids were Qualified Bids by March 15, 2024 at 12:00p.m. And, if the Debtor received two or more Qualified Bids, the Auction would be held on March 18, 2024 at 11:00 a.m., followed by a confirmation hearing on March 27, 2024.

6.  Under the Plan, the Mortgage Lender (who is also a Plan proponent) agreed to accept a gross amount of $25,500,000.00 on account of its Mortgage Claim, and would receive:

---

[1] *See* Amended Declaration Pursuant to Local Rule 1007-2, ¶¶ 2, 7 [Docket No. 32].
[2] Capitalize terms not defined herein shall have the meanings ascribed to such terms in the Plan or the Bid Procedures.

(a) if the Property was sold at Auction to someone other than the Mortgage Lender, $25,500,000.00 in Cash at the Closing from the Sale Proceeds; or (b) if the Mortgage Lender was the successful bidder pursuant to a credit bid, the Property. *See* Plan, §§ 4.2(b), 5.1.

7. The Baseline Bid for the Auction was $27,725,000.00. Thus, if the Property was sold at Auction for Cash, the purchase price would be sufficient to pay, in full, the Secured Tax Claim, the Mortgage Claim (fixed at $25,500,000.00 under the Plan) and the Carve-Out. *See* Bid Procedures, p. 9.

8. If the Mortgage Lender purchased the Property pursuant to a credit bid, however, the Mortgage Lender is obligated to "pay to the Debtor's Estate in Cash at Closing, the sums necessary to fund the Carve-Out in full." Plan, § 4.2(b). In addition, the Mortgage Lender is required to pay the Broker the "fixed amount of $70,000 for its commission and up to $20,000 for expense reimbursement." *Id.*, § 5.1; *see also* Bid Procedures, p. 2 ("if the Lender (or its assignee, nominee or designee) is the Purchaser pursuant to a credit bid, the Broker shall receive from Lender the fixed amount of $70,000 for its commission and up to $20,000 for expense reimbursement…").

9. As set forth in § 1.16(b) of the Plan, the sums necessary to fund the Carve-Out are: "(i) the Class 1 Secured Tax Claim, (ii) Allowed Fee Claims, (iii) Allowed Priority Claims, (iv) United States Trustee Fees, and (v) $75,000 to fund the distribution to Allowed Class 4 General Unsecured Claims." Plan, § 1.16(b). As does § 4.2(b) of the Plan, § 1.16(b) makes clear that, "in the event the Property is sold to the Mortgage Lender pursuant to a Credit Bid, the Mortgage Lender shall pay, in full," the Carve-Out. *Id.*

10. BCG and other mechanic's lienors were the holders of "Other Secured Claims" under the Plan, whose Claims are classified and treated in Class 3. Section 4.3(b) of the Plan provides that holders of Other Secured Claims shall receive the Sale Proceeds consistent with the

3

relative priority of each Allowed Other Secured Claim to the extent such Sale Proceeds exceed the amount necessary to pay the Secured Tax Claim, the Mortgage Claim ($25,500,00) and the Carve-Out. If the Sale Proceeds did not exceed such amounts, each holder of an Allowed Other Secured Claim will be deemed the holder of an Allowed General Unsecured Claim. *Id.*, § 4.3(b).

11. Each holder of a General Unsecured Claim, whose Claim is classified and treated in Class 4, will receive: (i) its pro rata share of the Sale Proceeds that exceed the aggregate amount of the Secured Tax Claim, the Mortgage Claim ($25,500,00), the Carve-Out and the Other Secured Claims; or (b) its pro rata share of $75,000 to be funded by the Mortgage Lender if the Mortgage Lender purchases the Property by credit bid. *Id.*, § 4.4(b).

12. On February 15, 2024, the Court issued an Order (I) Approving Disclosure Statement, Fixing Time for Filing Acceptances or Rejections of Debtor's Plan of Reorganization and Fixing the Time for the Confirmation Hearing; (II) Approving Bid Procedures, and (III) Granting Related Relief ("Disclosure Statement Order") [Docket No. 80].

**B.    The Sale of the Property to the Mortgage Lender
and Debtor's Receipt of the Returned Funds**

13. No party submitted a Qualified Bid for Cash by the Qualified Bid Designation Date, and the Auction did not take place. The Debtor advised that the only Qualified Bid received for the Property was the credit bid of the Mortgage Lender. As such, the Mortgage Lender became the purchaser of the Property, subject to the approval of the sale by the Court at the confirmation hearing. *See* Bid Procedures, p. 7-8.[3] In the event the sale of the Property to the Mortgage Lender

---

[3] "If, however, no such other Qualified Bid (other than Lender's credit bid) is received by the Qualified Bid Designation Date…, then the Auction will not be held as to the Property, and Broker shall so notify Lender…and the Debtor shall proceed to seek approval of the Bankruptcy Court of the sale of such Property to the Lender…based on the Lender's credit bid."

is approved by the Court, BCG and the holders of Other Secured Claims will be deemed holders of General Unsecured Claims in Class 4.

14. On March 18, 2024, counsel for the Debtor informed the Court and parties in interest that it received a wire in the sum of $1,002,000 (the "Returned Funds") from Blakie & Company, a bond broker, representing the return of collateral that was held to bond and discharge several mechanic's liens [Docket No. 90].

15. On March 19, 2024, the plan proponents (the Debtor and the Mortgage Lender) filed a Supplement to Disclosure Statement for Joint Plan of Liquidation Proposed by 4452 Broadway Mazal LLC and 4452 Broadway 1 LLC (the "Supplement") [Docket No. 94].

16. In the Supplement, the plan proponents addressed the receipt of the Returned Funds. They also advised that the Mortgage Lender asserts a first-priority security interest in the Returned Funds and that, the only other party that may also have a claim to the Returned Funds, is Moncon Inc. As a result, the plan proponents claim that "treatment to Creditors and Interest holders under the Plan remain unchanged because there would still be no unencumbered assets to distribute to Creditors." Supplement, p. 2. The plan proponents further advise that the Returned Funds will continue to be held by Debtor's counsel until it can be determined who has a right to the Returned Funds, "whether it be the Mortgage Lender or Moncon Inc." *Id.*

17. BCG requested, through counsel, a limited number of documents relevant to the Mortgage Lender's asserted security interest, including the collateral or other agreement(s) between the Debtor, Blakie & Company and/or the surety company, and the documents furnished by Blakie & Company and/or the surety to Debtor's counsel referred to in his March 18 letter to the Court. These documents are necessary for BCG to review the Mortgage Lender's assertion

5

that it has a perfected security interest in the Returned Funds. As of the date of this objection, however, BCG has not received any of the requested documents.

## OBJECTION

18. BCG objects to confirmation of the Plan to the extent that confirmation would abrogate the rights of BCG and other General Unsecured Creditors in and to the Returned Funds.

19. Although the Mortgage Lender has asserted a first-priority security interest in the Returned Funds, it is not clear that the Debtor granted the Mortgage Lender a security interest therein, and, even if it did, it is questionable whether the Mortgage Lender properly perfected that security interest. It is equally unclear whether Moncon Inc. has any rights in and to the Returned Funds that are superior to that of BCG and the other General Unsecured Creditors.

20. Thus, the plan proponents' assertion in the Supplement that "treatment to Creditors and Interest holders under the Plan remain unchanged because there would still be no unencumbered assets to distribute to Creditors", is presently unknown and may be inaccurate. Supplement, p. 2.  So is the statement that the Returned Funds will ultimately be distributed to either the Mortgage Lender or Moncon Inc. *See* Supplement, p. 2.

21. BCG therefore needs a reasonable opportunity to obtain and review the documentation it has requested and any additional documents necessary to complete its review and to challenge the Mortgage Lender's (and Moncon Inc.'s) asserted rights in and to the Returned Funds.

22. Accordingly, BCG respectfully requests that, if the Court is inclined to confirm the Plan, a provision be included in the confirmation order providing that the Debtor's counsel shall continue to hold the Returned Funds in a segregated escrow account belonging to Debtor's counsel pending a determination of the parties' rights in and to the Returned Funds.

23. In addition, since the Mortgage Lender purchased the Property pursuant to a credit bid, the Plan obligates the Mortgage Lender to pay: (i) the sums necessary to fund the Carve-Out in full (*see* Plan, § 4.2(b)) and (ii) the Broker the fixed amount of $70,000 for its commission and up to $20,000 for expense reimbursement (*see* Plan, § 5.1) (collectively, the "<u>Mortgage Lender Payables</u>"). As such, the Mortgage Lender is obligated to pay the sums provided for in the Plan notwithstanding the very recent receipt by the Debtor of the Returned Funds. If it is subsequently determined that the Mortgage Lender is entitled to the Returned Funds, the Debtor can thereafter reimburse the Mortgage Lender for the amounts it so paid.

24. Accordingly, BCG respectfully requests that, if the Court is inclined to confirm the Plan, a provision be included in the confirmation order requiring the Mortgage Lender to pay the Mortgage Lender Payables as and when due until such time as there is a determination of the parties' rights in and to the Returned Funds.

WHEREFORE, BCG respectfully requests that, if the Court is inclined to confirm the Plan, provisions be included in the confirmation order consistent with this Objection.

Dated: March 25, 2024
New York, New York

FARRELL FRITZ, P.C.

By: *s/ Martin G. Bunin*
Martin G. Bunin
Darren A. Pascarella
622 Third Avenue, 37th Floor
New York, New York 10017
Telephone: (212) 687-1230
Facsimile: (646) 237-1810
Email: mbunin@farrellfritz.com
dpascarella@farrellfritz.com

*Counsel to Broadway Construction Group, LLC*

FF\14424885.2